# EXHIBIT B

## STAGES OF A COMMISSION INVESTIGATION

A.  <u>Matter Under Inquiry</u>

When the Staff acquires information suggesting a possible violation of the federal securities laws, it may open a Matter Under Inquiry ("MUI"). (*See* Enforcement Manual ("EM") § 2.3.1.) The purpose of a MUI is for the Staff to gather additional information, on an informal basis, to determine whether or not to request that the SEC authorize a formal investigation, thereby devoting additional time and resources, into possible violations of the securities laws. (*Id*.) During a MUI, the Staff does not have authority to issue subpoenas or compel testimony from witnesses. (*Id*. §§ 2.3.4; 3.2.3.)

B.  <u>The Investigation</u>

If the Staff and appropriate supervisors determine, after gathering additional information, that it is an appropriate use of SEC resources to formally investigate the matter, the Staff may convert the MUI to an investigation and may request that the SEC issue a Formal Order of Investigation ("Formal Order").[1] (EM § 2.3.2.) While the threshold analysis for opening a MUI is low, determining whether a MUI should be converted to an investigation is typically a more detailed evaluation that is based on additional information gathered by the Staff. (*Id*. § 2.3.2.) The Formal Order, if approved, gives the Staff authority to issue subpoenas to compel the production of documents and witness testimony. (*Id*. §§ 2.3.4; 3.2.3.) However, "[s]ubpoenas issued by the Commission are not self-enforcing, and the recipients thereof are not subject to penalty for refusal to obey." *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984). To compel compliance with its subpoenas, the SEC must file a subpoena enforcement action in federal district court. *Id*.; *see also* 15 U.S.C. §§ 77v(b), 78u(c) ("In case of contumacy by, or refusal to obey a subpoena issued to any person, the Commission may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of [documents].").

---

[1] At the time this investigation was opened, the SEC had delegated authority to issue Formal Orders to certain senior officer of the Enforcement Division, including all supervisors responsible for Enforcement matters at or above the level of Associate Director or Associate Regional Director.

1. *Voluntary Document Requests*

In addition to serving subpoenas, the Staff may request the voluntary production of documents. (EM § 3.2.3.) "When the Staff begins an inquiry, voluntary document requests can be a principal means of gathering documents, data, and other information…. Many issuers, individuals, and other parties are willing to provide significant materials to the Staff voluntarily, without a subpoena…. Staff can consider, on a case by case basis, whether and how a voluntary document request as opposed to a subpoena may affect a witness's diligence in his or her search for documents and the witness's responsiveness." (*Id*.)

2. *Witness Interviews and Testimonies*

As part of its investigations, the Staff frequently interviews witnesses and takes witness testimonies. In a testimony, the witness is questioned under oath, similar to a deposition. (*See* EM §§ 3.3.4; 3.3.5.) If the witness resides in the United States, the Staff can issue a subpoena to compel the witness's testimony. If a witness resides in a foreign country and does not voluntarily travel to the United States for testimony, the Staff generally must work with the SEC's Office of International Affairs to notify and get the permission and cooperation of the foreign government to conduct interviews or take witness testimony. (*Id*. § 3.3.6.2.) Each country has its own set of preconditions or prohibitions to the questioning of its residents. (*Id.*) Some countries, such as Switzerland, prohibit completely the Staff from speaking directly with witnesses or taking testimony inside its borders. Other countries, such as Germany, generally prohibit the taking of sworn testimony and permit unrecorded interviews only if the witness consents.

C.   The Wells Process[2]

If the Staff makes a preliminary determination to recommend that the SEC authorize the filing of an enforcement action, it generally sends the prospective defendant a Wells notice. (EM § 2.4.) The Wells notice informs the recipient of the Staff's preliminary determination including the specific charges contemplated and the remedies the Staff plans to seek. (*Id*.) The Wells recipient has an opportunity to make a submission to the SEC responding to the Staff's recommendation. (*Id*.)

For some investigations, particularly those that involve significant and/or complex issues, Wells notice recipients are also given the opportunity to meet in-person with SEC Senior Officers, up to and including the Co-Directors of Enforcement.

D.   The Action Memo Process

If the Staff still recommends pursuing an enforcement action after completion of the Wells process, it submits to the Commissioners an Action Memo seeking approval to institute the action. (EM § 2.5.1.) The Action Memo is a formal, comprehensive memorandum prepared by Staff attorneys discussing, among other things, the relevant facts discovered during the investigation, the applicable law, any Wells submissions, and the Staff's overall recommendation to the Commission. (*See id.* and §

---

[2]   The Wells process was created by the Commission in response to a recommendation in 1972 by a committee chaired by attorney John A. Wells (the Advisory Committee on Enforcement Policies and Practices, known as the "Wells Committee"). The Wells Committee recommended that "except where the nature of the case precludes, a prospective defendant or respondent should be notified of the substance of the Staff's charges and probable recommendation in advance of the submission of the Staff memorandum to the Commission and be accorded an opportunity to submit a written statement to the Staff that would be forwarded to the Commission together with the Staff memorandum." SEC Report of the Advisory Committee on Enforcement Policies and Practices, at 31-32 (June 1, 1972).

In response to the Wells Committee recommendation, the Commission issued the "Wells Release" (Securities Act of 1933 Release No. 5310, "Procedures Relating to the Commencement of Enforcement Proceedings and Termination of Staff Investigations"). As the Commission stated in the Wells Release, the objective of the Wells process is for the Commission to "not only to be informed of the findings made by its Staff but also, where practicable and appropriate, to have before it the position of persons under investigation at the time it is asked to consider enforcement action." *See also SEC v. Sears*, 2005 WL 5885548, *2 (D. Or. July 28, 2005) ("[T]he information submitted in response to a Wells notice may prompt further inquiry by the agency Staff before making a final recommendation. A Wells notice is more appropriately viewed as a preliminary recommendation that is being circulated for comment. Even when no Wells submission is made in response to the Wells notice, the agency may thereafter learn of additional facts that warrant investigation, or seek additional documents or testimony to confirm its preliminary understanding of the facts or to clarify any lingering confusion.").

2.4 ("Wells submissions that are accepted by the staff will be provided to the Commission along with any recommendation from the staff for an enforcement action against the recipient of the Wells notice.").

Before the Action Memo can be submitted to the Commission, it (and all Wells submissions) usually must pass through multiple levels of review and comment, including by numerous Divisions and Offices within the SEC. The Staff attorneys and their supervisors review the comments provided by the various Divisions and Offices, respond to questions and issues raised, and, when appropriate, revise the Action Memo accordingly. This review and comment process often takes several weeks to complete. For complex or programmatically significant investigations, it may take even longer.

E.      Commission Review

After all interested Divisions and Offices have completed their reviews and the Director of Enforcement approves the recommendation, the matter is ready to be put on the Commission's calendar. Matters are typically set on the Commission's calendar at least three weeks after completion of the review and comment process. Once on the Commission's calendar, the Staff must send copies of the Action Memo, including all Wells Submissions, to the offices of the individual Commissioners to give them sufficient time to review the recommendation. The Staff typically present the recommendation to the Commissioners at a non-public meeting, where the Commissioners in attendance generally vote either to accept or reject the Staff's recommendation. (EM § 2.5.2.1.)