1  Robert J. Giuffra, Jr. (*admitted pro hac vice*)
   giuffrar@sullcrom.com
2  Sharon L. Nelles (*admitted pro hac vice*)
   nelless@sullcrom.com
3  Suhana S. Han (*admitted pro hac vice*)
   hans@sullcrom.com
4  Matthew A. Schwartz (*admitted pro hac vice*)
   schwartzmatthew@sullcrom.com
5  SULLIVAN & CROMWELL LLP
   125 Broad Street
6  New York, New York 10004
   Telephone:    (212) 558-4000
7  Facsimile:    (212) 558-3588

8  Laura Kabler Oswell (State Bar No. 241281)
   SULLIVAN & CROMWELL LLP
9  1870 Embarcadero Road
   Palo Alto, California 94303
10 Telephone:    (650) 461-5600
   Facsimile:    (650) 461-5700
11

12 *Attorneys for Defendants Volkswagen AG and*

13 *Volkswagen Group of America Finance, LLC*

14            **UNITED STATES DISTRICT COURT**

15            **NORTHERN DISTRICT OF CALIFORNIA**
                    **SAN FRANCISCO DIVISION**
16

17 IN RE: VOLKSWAGEN "CLEAN DIESEL"          )   MDL No. 2672 CRB (JSC)
   MARKETING, SALES PRACTICES, AND           )
18 PRODUCTS LIABILITY LITIGATION             )   **ANSWER AND AFFIRMATIVE**
                                             )   **DEFENSES OF DEFENDANTS**
19 ————————————————————————                  )   **VOLKSWAGEN AG AND VOLKSWAGEN**
   This Document Relates to: Securities Actions )  **GROUP OF AMERICA FINANCE, LLC**
20                                            )   **TO PLAINTIFF'S AMENDED**
   *U.S. S.E.C.* v. *Volkswagen AG, et al.*, Case No. 19- )   **COMPLAINT**
21 cv-01391                                   )
                                             )
22                                            )   Judge:      Hon. Charles R. Breyer
                                             )   Courtroom:  6, 17th Floor
23                                            )
                                             )
24 ————————————————————————                  )

25

26

27

28

Defendants Volkswagen AG ("VWAG") and Volkswagen Group of America Finance, LLC ("VWGoAF") (together, "Defendants"[1]), by their undersigned counsel, hereby answer the Amended Complaint ("Amended Complaint") in the above-captioned action as follows:[2]

## I.  SUMMARY

Defendants provide this Answer based on a reasonable inquiry and their knowledge to date. Investigations in the matters that are the subject of this Amended Complaint are ongoing.  Accordingly, Defendants reserve the right to amend, supplement, revise, clarify, or correct the responses set forth below after those investigations have concluded.[3]

1.      In response to paragraph 1, VWAG denies, except admits that on three occasions in 2014 and 2015, VWGoAF issued U.S. dollar-denominated debt securities guaranteed by VWAG, raising a total of $8.3 billion in par value and, as reflected in the SOF, certain VWAG employees "designed, created, and implemented a software function to detect, evade and defeat U.S. emissions standards" and that certain VW employees "agreed to deceive U.S. regulators and U.S. customers about whether the Subject Vehicles and the Porsche Vehicles complied with U.S. emissions standards."  In response to paragraph 1, VWGoAF admits that on three occasions in 2014 and 2015, VWGoAF issued U.S. dollar-denominated debt securities guaranteed by VWAG, raising a total of $8.3 billion in par value, but states that it is without knowledge

---

[1]   "Defendants" as noted in the responses herein refers to both VWAG and VWGoAF unless otherwise noted.

[2]   On or about January 11, 2017, VWAG entered into a Rule 11 Plea Agreement with the United States of America filed in the action *United States* v. *Volkswagen AG*, No. 16-cr-20394 (E.D. MI.), which attached a Statement of Facts as Exhibit 2 ("Statement of Facts" or "SOF").  The Plea Agreement was accepted in full by the Court on April 21, 2017.  For the avoidance of doubt, in this Answer, Defendants do not and will not dispute the accuracy of any of VWAG's admissions in the Statement of Facts. Defendants' responses herein should be read to be consistent with the admissions made by VWAG in the Statement of Facts, and nothing in this Answer should be construed as a contradiction of the Statement of Facts.

[3]   For the avoidance of doubt, any allegation not expressly admitted herein by Defendants is denied by Defendants, except that Defendants VWAG and VWGoAF do not deny the facts set forth in the SOF. Further, Defendants are not required to respond to the headings, sub-headings, appendices or footnotes of the Amended Complaint, but, to the extent any response is required, unless otherwise expressly stated, Defendants deny the allegations and characterization of allegations set forth in the headings, sub-headings, appendices and footnotes of the Amended Complaint.

-2-

1   or information sufficient to form a belief as to the truth of the remaining allegations therein, and therefore

2   denies.

3   2.      In response to paragraph 2, VWAG denies.  In response to paragraph 2, VWGoAF states

4   that it is without knowledge or information sufficient to form a belief as to the truth of the allegations

5   therein, and therefore denies.

6   3.      In response to the first sentence of paragraph 3, VWAG denies, except admits that, as

7   reflected in the SOF, "defeat device software" was installed in approximately 585,000 Subject Vehicles

8   sold in the United States from 2009 through 2015, which "did not meet U.S. emissions standards."  In

9   response to the second sentence of paragraph 3, Defendants deny, except admit that on three occasions in

10  2014 and 2015, VWGoAF issued U.S. dollar-denominated debt securities guaranteed by VWAG, raising

11  a total of $8.3 billion in par value.  In response to the third sentence of paragraph 3, VWAG admits that

12  certain government investigations and inquiries regarding the diesel issue were launched and, as reflected

13  in the SOF, "[t]hroughout 2014 and the first half of 2015" Volkswagen "continued to offer, and/or cause

14  to be offered, software and hardware 'fixes' and explanations to U.S. regulators for the 2.0 Liter Subject

15  Vehicles' higher NOx measurements on the road without revealing the underlying reason—the existence

16  of software designed to detect, evade and defeat U.S. emissions tests," and certain VWAG employees

17  destroyed certain documents related to U.S. emissions issues.  In response to the first and third sentences

18  of paragraph 3, VWGoAF states that it is without knowledge or information sufficient to form a belief as

19  to the truth of the allegations therein, and therefore denies.

20  4.      In response to the first sentence of paragraph 4, Defendants deny, except admit that, as

21  reflected in the SOF, certain VWAG employees "designed, created, and implemented a software function

22  to detect, evade and defeat U.S. emissions standards."  In response to the second sentence of paragraph 4,

23  Defendants admit that it refers to the VWAG plea agreement entered in *United States* v. *Volkswagen AG*,

24  No. 16-cr-20394 (E.D. MI.), and respectfully refer the Court to this document for a complete and accurate

25  description of its contents, and otherwise deny.

26  5.      In response to paragraph 5, Defendants deny, except admit that Martin Winterkorn was

27  CEO and Chairman of the Board of Management of VWAG from January 1, 2007 through September 23,

28

-3-

1   2015, when he resigned as chief executive of VWAG, and that paragraph 5 purports to refer to "Strategy

2   2018."

3        6.     In response to the first sentence of paragraph 6, VWAG denies, except admits that the

4   ability to sell diesel vehicles in the U.S. was a goal of VWAG.  In response to the second and third

5   sentences of paragraph 6, VWAG admits that diesel engines often provide more torque than gasoline

6   engines and often provide better fuel economy than cars that run on gasoline, but otherwise states that it

7   is without knowledge or information sufficient to form a belief as to the truth of the allegations therein,

8   and therefore denies.  In response to paragraph 6, VWGoAF states that it is without knowledge or

9   information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

10       7.     In response to paragraph 7, VWAG denies, except admits that, as reflected in the SOF,

11  certain VW supervisors "marketed, and caused to be marketed, the Subject Vehicles to the U.S. public as

12  'clean diesel' and 'environmentally-friendly.'"  In response to paragraph 7, VWGoAF states that it is

13  without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and

14  therefore denies.

15       8.     In response to the first, second and third sentences of paragraph 8, VWAG denies, except

16  admits that more than 100,000 TDI Audi and Volkswagen vehicles were sold in the United States in 2013.

17  In response to the fourth sentence of paragraph 8, VWAG admits that by mid-2015, VWAG became the

18  largest automaker in the world by volume of cars.  In response to paragraph 8, VWGoAF states that it is

19  without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and

20  therefore denies.

21       9.     In response to the first sentence of paragraph 9, VWAG denies.  In response to the first

22  sentence of paragraph 9, VWGoAF states that that it is without knowledge or information sufficient to

23  form a belief as to the truth of the allegations therein, and therefore denies.  In response to the second and

24  third sentences of paragraph 1, Defendants deny, except admit that on three occasions in 2014 and 2015,

25  VWGoAF issued U.S. dollar-denominated debt securities guaranteed by VWAG, raising a total of

26  $8.3 billion in par value, and respectfully refer the Court to the Offering Memoranda for a complete and

27  accurate description of its contents.  In response to the fourth sentence of paragraph 9, Defendants deny.

28

-4-

10.     In response to paragraph 10, VWAG denies, except admits that, as reflected in the SOF, if "the defeat device detected that the vehicle was not being tested, it operated in a different mode, in which the effectiveness of the vehicle's emissions control systems was reduced substantially, causing the vehicle to emit substantially higher NOx," and otherwise denies.  In response to the first sentence of paragraph 10, VWGoF denies.  In response to the second, third, and fourth sentences of paragraph 10, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

11.     In response to the first sentence of paragraph 11, VWAG admits that, as reflected in the SOF, "defeat device software" was installed in approximately 585,000 Subject Vehicles sold in the United States from 2009 through 2015, which "did not meet U.S. emissions standards," and otherwise denies.  In response to the second and third sentences of paragraph 11, VWAG admits that, as reflected in the SOF, certain VW employees "designed the VW defeat device to recognize whether the vehicle was undergoing standard U.S. emissions testing on a dynamometer (or 'dyno') or whether the vehicle was being driven on the road under normal driving conditions" and if "the defeat device detected that the vehicle was not being tested, it operated in a different mode, in which the effectiveness of the vehicle's emissions control systems was reduced substantially, causing the vehicle to emit substantially higher NOx, sometimes 35 times higher than U.S. standards," and otherwise denies.  In response to paragraph 11, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

12.     In response to the first and second sentences of paragraph 12, VWAG admits that, as reflected in the SOF, "defeat device software" was installed in the "Subject Vehicles," which "did not meet U.S. emissions standards," and otherwise denies.  In response to the third, fourth, and fifth sentences of paragraph 12, Defendants deny.  In response to the first and second sentences of paragraph 12, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

13.     In response to paragraph 13, VWAG admits that, as reflected in the SOF, "[i]n or around March 2014, certain VW employees learned of the results of a study undertaken by West Virginia

-5-

University's Center for Alternative Fuels, Engines, and Emissions and commissioned by the International Council on Clean Transportation (the ICCT study). The ICCT study identified substantial discrepancies in the NOx emissions from certain 2.0 Liter Subject Vehicles when tested on the road compared to when these vehicles were undergoing EPA and CARB standard drive cycle tests on a dynamometer.  The results of the study showed that two of the three vehicles tested on the road, both 2.0 Liter Subject Vehicles, emitted NOx at values of up to approximately 40 times the permissible limit applicable during testing in the United States," and otherwise denies.  In response to paragraph 13, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

14.     In response to the first sentence of paragraph 14, VWAG denies.  In response to the second sentence of paragraph 14, VWAG admits that, as reflected in the SOF, "[f]ollowing the ICCT study, CARB, in coordination with the EPA, attempted to work with VW to determine the cause for the higher NOx emissions in the 2.0 Liter Subject Vehicles when being driven on the road as opposed to on the dynamometer undergoing standard emissions test cycles," and otherwise denies.  In response to paragraph 14, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

15.     In response to paragraph 15, Defendants admit that it purports to refer to unidentified memos, and respectfully refer the Court to these documents for a complete and accurate description of their contents, and otherwise deny.

16.     In response to paragraph 16, VWAG denies.  In response to paragraph 16, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies

17.     In response to paragraph 17, VWAG admits that, as reflected in the SOF, throughout 2014, certain employees "continued to offer, and/or cause to be offered, software and hardware 'fixes' and explanations to U.S. regulators for the 2.0 Liter Subject Vehicles' higher NOx measurements on the road without revealing the underlying reason—the existence of software designed to detect, evade and defeat U.S. emissions tests," and, as reflected in the SOF, certain VWAG employees destroyed certain documents

-6-

related to U.S. emissions issues, and otherwise denies.  In response to paragraph 17, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

18.     In response to the first and second sentences of paragraph 18, VWAG admits that the ability to sell diesel vehicles in the United States was an important goal, and otherwise denies.  In response to the third sentence of paragraph 18, Defendants admit that on three occasions in 2014 and 2015, VWGoAF issued U.S. dollar-denominated debt securities guaranteed by VWAG, raising a total of $8.3 billion in par value, and otherwise deny.  In response to the first and second sentences of paragraph 18, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

19.     In response to paragraph 19, Defendants deny, except admit that participants in U.S. capital markets are required to make certain disclosures when issuing certain types of securities under applicable United States law, and respectfully refer the Court to those laws for a complete and accurate description of their contents.

20.     In response to the first, second and third sentences of paragraph 20, VWAG admits that, as reflected in the SOF, "[o]n or about August 19, 2015, in a meeting with CARB in El Monte, California, a VW employee explained" "that certain of the 2.0 Liter Subject Vehicles used different emissions treatment depending on whether the vehicles were on the dynamometer or the road, thereby signaling that VW had evaded U.S. emissions tests," and "[o]n or about September 3, 2015, in a meeting in El Monte, California with CARB and EPA" an employee "admitted that VW had installed a defeat device in the 2.0 Liter Subject Vehicles," and otherwise denies.  In response to the fourth sentence of paragraph 20, VWAG admits that, as reflected in the SOF, "[o]n or about September 18, 2015, the EPA issued a public Notice of Violation to VW," and did not, at that time, certify Volkswagen Model Year 2016 diesel vehicles for sale in the United States, and otherwise denies.  In response to paragraph 20, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

21.     In response to the first sentence of paragraph 21, Defendants admit that after the September 18, 2015 notice of violation, the prices of certain VW bonds temporarily declined in the secondary market, and otherwise deny.  In response to the second sentence of paragraph 21, Defendants admit that after the September 18, 2015 notice of violation, certain ratings agencies initially downgraded their ratings of certain Volkswagen debt, and otherwise deny.  In response to the third sentence of paragraph 21, VWAG admits.  In response to the third sentence of paragraph 21, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, but admits that VWGoAF issued no debt during that period.

22.     In response to the first and second sentences of paragraph 22, Defendants admit that they refer to the VWAG plea agreement entered in *United States* v. *Volkswagen AG*, No. 16-cr-20394 (E.D. MI.), and respectfully refer the Court to this document for a complete and accurate description of its contents.  In response to the third sentence of paragraph 22, Defendants admit that it purports to summarize settlement agreements with the EPA, state attorneys general, and consumers, and respectfully refer the Court to those agreements for a complete and accurate description of their contents.

23.     Denied.

24.     In response to paragraph 24, Defendants deny, except admits that Plaintiff seeks permanent injunctions, disgorgement with prejudgment interest, and civil penalties against the corporate defendants, as well as permanent injunctions, civil penalties and an officer-and-director bar against Winterkorn, purportedly caused by Defendants' violations of Section 17(a) of the Securities Act of 1933 ("Securities Act'"), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder and respectfully refer the Court to those laws and regulations for a complete and accurate description of their contents.

25.     In response to paragraph 25, Defendants state that it is an explanatory statement by Plaintiff to which no response is required.  To the extent that any response is required, Defendants admit that the Amended Complaint purports to assert claims under Sections 20(b) and 20(d) of the Securities Act, 15 U.S.C. §§ 77t(b), (d), and Sections 21(d) and 21(e) of the Exchange Act, 15 U.S.C. §§ 78u(d), (e), and

SULLIVAN &
CROMWELL LLP

1    respectfully refer the Court to those laws and regulations for a complete and accurate description of their

2    contents.

3         26.    In response to paragraph 26, Defendants state that it contains legal conclusions to which

4    no response is required.

5         27.    In response to paragraph 27, Defendants state that it contains legal conclusions to which

6    no response is required.  To the extent that any response is required, Defendants admit that it offered and

7    sold securities in the United States and deny that any violations of law occurred.

8         28.    In response to paragraph 28, Defendants state that it contains legal conclusions to which

9    no response is required.

10        29.    Denied.

11        30.    Denied.

12        31.    In response to the first sentence of paragraph 31, Defendants admit.  In response to the

13   second sentence of paragraph 31, Defendants admit that VWAG is the ultimate parent and controlling

14   company of numerous subsidiary companies and organizations.  In response to the third sentence of

15   paragraph 31, Defendants admit that VWAG and some, but not all, of its subsidiaries and affiliates

16   develop, produce, and sell vehicles under the automotive brands of Volkswagen Passenger Cars,

17   Volkswagen Commercial Vehicles, Audi, Porsche, Bentley, Bugatti, Lamborghini, Ducati, Scania, Man,

18   SEAT, and Skoda.

19        32.    In response to the first sentence of paragraph 32, VWAG admits that the VWAG Board of

20   Management has responsibility for managing the business activities of VWAG, but limited responsibility

21   for leading the subsidiaries within VW Group, and otherwise denies.  In response to the second sentence

22   of paragraph 32, VWAG admits that each member of the Board of Management is assigned responsibility

23   for one or more functions within VWAG, and otherwise denies.  In response to the third sentence of

24   paragraph 32, VWAG admits.  In response to paragraph 32, VWGoAF states that it is without knowledge

25   or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

26        33.    In response to the first sentence of paragraph 33, VWAG admits that VWAG and certain

27   of the twelve brands within the Volkswagen Group have their own management boards, and otherwise

28

-9-

1  denies.  In response to the second sentence of paragraph 33, VWAG admits that certain members of the

2  VWAG Board of Management during certain periods have also sat on the Board of Management of

3  Volkswagen Brand, which is not a legally distinct entity, and otherwise denies.  In response to paragraph

4  33, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth

5  of the allegations therein, and therefore denies.

6  34.    In response to the first sentence of paragraph 34, Defendants admit that VWAG is the

7  ultimate parent of VWGoAF, and otherwise deny.  In response to the second sentence of paragraph 34,

8  Defendants deny.

9  35.    In response to the first sentence of paragraph 35, Defendants admit that on three occasions

10  in 2014 and 2015, VWGoAF issued U.S. dollar-denominated debt securities guaranteed by VWAG,

11  raising a total of $8.3 billion in par value.  In response to the second sentence of paragraph 35, Defendants

12  state that it contains legal conclusions to which no response is required, except that Defendants admit that

13  it refers to various laws and regulations, and respectfully refer the Court to those laws and regulations for

14  a complete and accurate description of their contents.  In response to the third sentence of paragraph 35,

15  VWAG states that it is an explanatory statement by Plaintiff to which no response is required.  To the

16  extent a response is required, VWAG admits that it published in English its annual and interim financial

17  statements on its website.  In response to the third sentence of paragraph 35, VWGoAF states that it is

18  without knowledge or information sufficient to form a belief as to the truth of the allegation therein, and

19  therefore denies.

20  36.    In response to the first sentence of paragraph 36, Defendants state that they are without

21  knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore deny.

22  In response to the second sentence of paragraph 36, VWAG admits that Winterkorn worked for VWAG

23  or its affiliated companies for approximately 30 years and resigned in September 2015.  In response to the

24  third sentence of paragraph 36, VWAG admits.  In response to the fourth sentence of paragraph 36,

25  VWAG admits that between January 2007 and September 2015, Winterkorn was CEO of VWAG,

26  Chairman of VWAG's Board of Management, that Winterkorn was the member of the Board of

27  Management of VWAG responsible for Research and Development, and VWAG also admits that between

28

-10-

SULLIVAN &
CROMWELL LLP

January 2008 and September 2015, Winterkorn was a member of the Board of Directors of VWGoA, and otherwise denies.  In response to the second, third and fourth sentences of paragraph 36, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

37.    In response to paragraph 37, VWAG admits that Winterkorn was Chairman of the Board of Management of Porsche Automobile Holding SE ("Porsche") until October 31, 2015 and that Winterkorn was Chairman of the Supervisory Board of Audi AG ("Audi") until November 11, 2015.  In response to paragraph 37, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

38.    In response to paragraph 38, VWAG admits.  In response to paragraph 38, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

39.    In response to the first sentence of paragraph 39, Defendants admit.  In response to the second and third sentences of paragraph 39, Defendants admit that VWGoAF was formed on February 14, 2014, and otherwise deny.  In response to the fourth sentence of paragraph 39, Defendants admit that VWAG's Board of Management approved the incorporation of VWGoAF, and otherwise deny.

40.    In response to the first and second sentences of paragraph 40, Defendants admit.  In response to the third sentence of paragraph 40, Defendants state that it contains legal conclusions to which no response is required.  In response to the fourth sentence of paragraph 40, Defendants admit that VWGoAF did not issue any bonds in the United States between October 2015 and October 2018, and otherwise deny.

41.    In response to the first, second, and third sentences of paragraph 41, VWAG admits.  In response to the fourth sentence of paragraph 41, VWAG admits that between January 2008 and September 2015, Winterkorn was a member of the Board of Directors of VWGoA, and otherwise denies.  In response to paragraph 41, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

ANSWER TO PLAINTIFF'S AMENDED COMPLAINT
CASE NO. 19-cv-01391; MDL No. 2672 CRB (JSC)

42.     In response to the first sentence of paragraph 42, VWAG admits that Audi AG is a motor vehicle manufacturer headquartered in Ingolstadt, Germany, and otherwise denies.  In response to the second sentence of paragraph 42, VWAG admits that as of 2017, VWAG owned approximately 99.55% of the shares of Audi AG.  In response to paragraph 42, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

43.     In response to the first sentence of paragraph 43, Defendants admit that it purports to refer to a December 14, 2015 press release, and respectfully refer the Court to the release for a complete and accurate description of its contents, and otherwise deny.  In response to the second sentence of paragraph 43, VWAG admits that VWAG developed its "clean diesel" technology which it later marketed and sold in the United States, and otherwise denies.  In response to the second sentence of paragraph 43, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

44.     In response to the first sentence of paragraph 44, VWAG admits that diesel fuel is more efficient and dense than gasoline fuel by certain measures, and certain diesel engines may release more emissions and particulate matter than gasoline engines under some circumstances.  In response to the second sentence of paragraph 44, Defendants state that it contains legal conclusions to which no response is required.  To the extent that any response is required, Defendants deny.  In response to the third sentence of paragraph 44, Defendants state that it contains legal conclusions to which no response is required.  To the extent that any response is required, Defendants deny.  In response to the first sentence of paragraph 44, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

45.     In response to the first sentence of paragraph 45, VWAG admits that Martin Winterkorn was a member of VWAG's Board of Management and the member of the VWAG Board of Management responsible for research and development beginning in the early 2000s until September 2015, and otherwise denies.  In response to the second sentence of paragraph 45, VWAG admits that VWAG endeavored to design fuel-efficient diesel vehicles, and that this endeavor required VWAG to spend money, and otherwise denies.  In response to the third sentence of paragraph 45, Defendants state that

-12-

they are without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore deny.  In response to the first and second sentences of paragraph 45, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

46.    In response to the first sentence of paragraph 46, VWAG admits that Winterkorn became CEO and Chairman of the Board of Management of VWAG in January 2007.  In response to the second and third sentences of paragraph 46, VWAG admits that it purports to refer to "Strategy 2018," and otherwise denies.  In response to paragraph 46, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

47.    In response to paragraph 47, VWAG admits that diesel vehicle sales in the United States increased after 2008 and that the ability to sell diesel vehicles in the United States was a goal of VWAG, and otherwise denies.  In response to paragraph 47, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

48.    In response to the first sentence of paragraph 48, VWAG admits that in 2006, VW sold approximately 235,140 vehicles in the United States and approximately 28,000 of them were diesel vehicles.  In response to the second sentence of paragraph 48, VWAG admits that the U.S. regulations required vehicles in the United States to comply with a stricter NOx emissions standard for model year 2007, and otherwise denies.  In response to paragraph 48, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

49.    In response to the first and second sentences of paragraph 49, Defendants admit that they purport to refer to an unidentified and undisclosed document, and respectfully refer the Court to that document for a complete and accurate description of its contents, and otherwise deny.  In response to the third sentence of paragraph 49, VWAG admits that the first "clean diesel" brand vehicle was introduced to the U.S. market in 2008, and otherwise denies.  In response to the third sentence of paragraph 49, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

-13-

50.     In response to the first and second sentences of paragraph 2, VWAG admits that VW's sales of vehicles in the United States, including "clean diesel" branded vehicles, increased after 2008, and otherwise denies.  In response to the third sentence of paragraph 50, VWAG states that it is an explanatory statement by Plaintiff to which no response is required.  To the extent a response to the third sentence of paragraph 50 is required, VWAG denies.  In response to the fourth sentence of paragraph 50, VWAG admits that VW sold approximately 11 million Type EA 189 diesel engine vehicles worldwide between 2009 through 2015, and, as reflected in the SOF, sold approximately 585,000 Subject Vehicles in the United States from 2009 through 2015, and otherwise denies.  In response to paragraph 50, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

51.     In response to the first sentence of paragraph 51, VWAG admits that on three occasions in 2014 and 2015, VWGoAF issued U.S. dollar-denominated debt securities guaranteed by VWAG, raising a total of $8.3 billion in par value, and otherwise denies.  In response to the first sentence of paragraph 51, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.  In response to the second sentence of paragraph 51, Defendants admit that Plaintiff purports to refer to the Offering Memoranda for the three U.S. dollar-denominated debt securities guaranteed by VWAG in 2014 and 2015 and respectfully refer the Court to the Offering Memoranda for a complete and accurate description of their contents, and otherwise deny.

52.     Denied.

53.     In response to the first and second sentences of paragraph 53, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore deny.  In response to the third and fourth sentences of paragraph 53, VWAG admits that in 1981, Winterkorn joined Audi AG as an assistant to the Member of the Board for Quality Assurance and in 1993 Winterkorn joined VWAG as the Head of Quality Assurance, and otherwise denies.  In response to the third and fourth sentences of paragraph 53, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

-14-

54.     In response to the first sentence of paragraph 54, VWAG admits that Winterkorn became Head of Group Quality Assurance at VWAG in 1993.  In response to the second sentence of paragraph 54, VWAG admits.  In response to the third sentence of paragraph 54, VWAG admits that Winterkorn was the member of the Board of Management of VWAG responsible for Research and Development beginning in the early 2000s.  In response to paragraph 54, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

55.     In response to the first sentence of paragraph 55, VWAG admits.  In response to the second sentence of paragraph 55, VWAG admits that Winterkorn became responsible for the Technical Development department at Audi AG in 2003.  In response to the third sentence of paragraph 55, VWAG admits that Winterkorn served as the Chairman of the Board of Management of Audi AG until December 31, 2006.  In response to paragraph 55, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

56.     In response to the first sentence of paragraph 56, VWAG admits.  In response to the second sentence of paragraph 56, VWAG admits that Winterkorn was the member of the Board of Management of VWAG responsible for Research and Development beginning in the early 2000s, and otherwise denies. In response to the third sentence of paragraph 56, VWAG admits that Winterkorn resigned from VWAG in September 2015.  In response to paragraph 56, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

57.     In response to paragraph 57, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore deny.

58.     In response to the first sentence of paragraph 58, VWAG denies.  In response to the first sentence of paragraph 58, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.  In response to the second sentence of paragraph 58, Defendants admit that it purports to quote VWAG's March 2007 earnings call, and respectfully refer the Court to the earnings call for a complete and accurate description of its contents.

Sullivan &
Cromwell llp

59.     In response to paragraph 59, Defendants admit that it purports to quote VWAG's 2010 Annual Report, and respectfully refer the Court to the Annual Report for a complete and accurate description of its contents, and otherwise deny.

60.     In response to the first sentence of paragraph 60, VWAG admits that Winterkorn traveled to different places to, among other things, attend and make presentations at car shows., and otherwise denies.  In response to the second sentence of paragraph 60, VWAG admits that Winterkorn on occasion travelled to the United States, but VWAG states that it is without knowledge or sufficient information to form a belief as to the truth of the remaining allegations therein, and therefore denies.  In response to paragraph 60, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

61.     In response to the first sentence of paragraph 61, Defendants state that it is an explanatory statement by Plaintiff to which no response is required.  To the extent that any response is required, Defendants deny.  In response to the second and third sentences of paragraph 61, Defendants admit that during car shows, Winterkorn appeared in photographs in which he was purportedly inspecting vehicles, but Defendants state that they are without knowledge or sufficient information to form a belief as to the truth of the remaining allegations therein, and therefore deny.

62.     In response to paragraph 62, Defendants admit that it purports to contain pictures from unidentified and undisclosed sources and respectfully refer the Court to those sources for a complete and accurate description of their contents, and otherwise deny.

63.     In response to the first sentence of paragraph 63, Defendants state that it purports to quote from unidentified and undisclosed sources and therefore deny.  In response to the second sentence of paragraph 63, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore deny.  In response to the third sentence of paragraph 63, Defendants admit that it purports to quote VWAG's 2010 Annual Report and respectfully refer the Court to the 2010 Annual Report for a complete and accurate description of its contents, and otherwise deny.

ANSWER TO PLAINTIFF'S AMENDED COMPLAINT
CASE NO. 19-cv-01391; MDL No. 2672 CRB (JSC)

64.     In response to the first sentence of paragraph 64, VWAG admits that the "clean diesel" engine was first introduced in the MY 2009 Jetta, but states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein, and therefore denies.  In response to the second and third sentences of paragraph 64, VWAG denies.  In response to paragraph 64, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

65.     In response to the first sentence of paragraph 65, VWAG admits that, as reflected in the SOF, "defeat device software" was installed in certain "clean diesel" vehicles sold in the United States between 2009 and 2015 which "did not meet U.S. emissions standards," and otherwise denies.  In response to the second sentence of paragraph 66, VWAG states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.  In response to paragraph 65, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

66.     In response to the first sentence of paragraph 66, VWAG admits that it sold "clean diesel" vehicles in the United States between 2009 and 2015, and otherwise denies.  In response to the second sentence of paragraph 66, VWAG denies.  In response to the first sentence of paragraph 66, VWGoAF denies.  In response to the second sentence of paragraph 66, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

67.     In response to paragraph 67, Defendants state that it contains legal conclusions to which no response is required, except that Defendants admit that it refers to various laws and regulations, and respectfully refer the Court to those laws and regulations for a complete and accurate description of their contents.

68.     In response to paragraph 68, Defendants state that it contains legal conclusions to which no response is required, except that Defendants admit that it refers to various laws and regulations, and respectfully refer the Court to those laws and regulations for a complete and accurate description of their contents

-17-

69.     In response to paragraph 69, Defendants state that it contains legal conclusions to which no response is required, except that Defendants admit that it refers to various laws and regulations, and respectfully refer the Court to those laws and regulations for a complete and accurate description of their contents.

70.     In response to paragraph 70, Defendants state that it contains legal conclusions to which no response is required, except that Defendants admit that it refers to various laws and regulations, and respectfully refer the Court to those laws and regulations for a complete and accurate description of their contents.

71.     In response to paragraph 71, Defendants state that it contains legal conclusions to which no response is required, except that Defendants admit that it refers to various laws and regulations, and respectfully refer the Court to those laws and regulations for a complete and accurate description of their contents.

### 1.     VW Installs "Defeat Devices" in Millions of Diesel Vehicles.

72.     In response to the first sentence of paragraph 72, VWAG admits that, as reflected in the SOF, "defeat device software" was installed in approximately 585,000 Subject Vehicles sold in the United States from 2009 through 2015, which "did not meet U.S. emissions standards," and otherwise denies.  In response to the second sentence of paragraph 72, VWAG admits that, as reflected in the SOF, the defeat device could "recognize whether the vehicle was undergoing standard U.S. emissions testing on a dynamometer (or "dyno") or whether the vehicle was being driven on the road under normal driving conditions," and otherwise denies.  In response to paragraph 72, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

73.     In response to paragraph 73, VWAG admits, as reflected in the SOF, that standard U.S. emissions tests are performed on a dynamometer "with specific, published drive cycles" and that the Subject Vehicles could "recognize whether the vehicle was undergoing standard U.S. emissions testing on a dynamometer (or 'dyno') or whether the vehicle was being driven on the road under normal driving conditions," and otherwise denies.  In response to paragraph 73, VWGoAF states that it is without

-18-

knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

74.     In response to paragraph 74, VWAG admits that, as reflected in the SOF, the Subject Vehicles could "recognize whether the vehicle was undergoing standard U.S. emissions testing on a dynamometer (or 'dyno') or whether the vehicle was being driven on the road under normal driving conditions" and "if the defeat device detected that the vehicle was not being tested, it operated in a different mode, in which the effectiveness of the Vehicle's emissions control systems was reduced substantially, causing the vehicle to emit substantially higher NOx, sometimes 35 times higher than U.S. standards," and otherwise denies.  In response to paragraph 74, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

75.     In response to paragraph 75, VWAG denies, except admits that, as reflected in the SOF, "if the defeat device detected that the vehicle was not being tested, it operated in a different mode, in which the effectiveness of the Vehicle's emissions control systems was reduced substantially, causing the vehicle to emit substantially higher NOx, sometimes 35 times higher than U.S. standards."  In response to paragraph 75, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

76.     In response to paragraph 76, VWAG admits that, as reflected in the SOF, "the original concept of the dual-mode, emissions cycle-beating software" came from Audi, but otherwise states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.  In response to paragraph 76, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

77.     In response to paragraph 77, VWAG admits that in the early 2000s Audi developed certain 3.0-liter V6 diesel engines for luxury cars for the European market, and otherwise denies.  In response to paragraph 77, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

78.     In response to paragraph 78, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore deny.

79.    In response to the first sentence of paragraph 79, VWAG admits that Winterkorn became CEO of VWAG on January 1, 2007, but otherwise states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.  In response to the second sentence of paragraph 79, VWAG admits that, as reflected in the SOF, "[t]hroughout 2007, various technical problems arose with the US'07 project that led to international discussions and disagreements among members of the VW AG team that was primarily responsible for ensuring vehicles met U.S. emission standards," and otherwise denies.  In response to the first and second sentences of paragraph 79, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.  In response to the third and fourth sentences of paragraph 79, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore deny.

80.    In response to the first sentence of paragraph 80, VWAG admits that a meeting was scheduled for November 8, 2007, and various VW employees, including some engineers from the Brand Engine Development Department, and Winterkorn attended, and otherwise denies.  In response to the second sentence of paragraph 80, VWAG states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.  In response to paragraph 80, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

81.    In response to paragraph 81, Defendants admit that it purports to summarize slides prepared in advance of a November 8, 2007 meeting (*see* ¶ 82), which were prepared in German, and respectfully refer the Court to the slides for a complete and accurate description of their contents, and otherwise deny.

82.    In response to paragraph 82, Defendants admit that it purports to summarize slides prepared in advance of a November 8, 2007 meeting, which were prepared in German, and respectfully refer the Court to the slides for a complete and accurate description of their contents, and otherwise deny.

83.    In response to paragraph 83, VWAG admits that Jens Hadler was the Head of VW Brand Engine Development, that Hadler attended the November 8, 2007 meeting, and that proposed improvements to diesel exhaust systems were discussed, and otherwise denies.  In response to

-20-

paragraph 83, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

84.     In response to the first sentence of paragraph 84, VWAG denies.  In response to the second, third, and fourth sentences of paragraph 84, VWAG admits that, as reflected in the SOF, "defeat device software" was installed in approximately 585,000 Subject Vehicles sold in the United States from 2009 through 2015, which "did not meet U.S. emissions standards," and otherwise denies.  In response to paragraph 84, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

85.     In response to paragraph 85, VWAG admits that, as reflected in the SOF, "[i]n or around 2012, hardware failures developed in certain of the 2.0 Liter Subject Vehicles that were being used by customers on the road in the United States" and that certain employees "hypothesized that vehicles equipped with the defeat device stayed in 'dyno' mode," which "increased stress on the exhaust system," and otherwise denies.  In response to paragraph 85, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

86.     In response to paragraph 86, VWAG admits that, as reflected in the SOF, "[i]n or around July 2012, engineers from the VW Brand Engine Development department met, in separate meetings, with" Gottweis and Neusser and "used a document" "[t]o explain that they suspected that the root cause of the hardware failures in the 2.0 Liter Subject Vehicles was the increased stress on the exhaust system from being driven too long in 'dyno' mode as a result of the use of software designed to detect, evade and defeat U.S. emissions tests" and that "each instructed the engineers who presented the issue to [] destroy the document they had used to illustrate the operations of the defeat device," and otherwise denies.  In response to paragraph 86, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

87.     In response to paragraph 87, VWAG admits that, as reflected in the SOF, "[i]n or around July 2012, engineers from the VW Brand Engine Development department met, in separate meetings, with" Gottweis and Neusser and "used a document" "[t]o explain that they suspected that the root cause of the hardware failures in the 2.0 Liter Subject Vehicles was the increased stress on the exhaust system

-21-

from being driven too long in 'dyno' mode as a result of the use of software designed to detect, evade and defeat U.S. emissions tests" and that "each instructed the engineers who presented the issue to [] destroy the document they had used to illustrate the operations of the defeat device," and otherwise denies.  In response to paragraph 87, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

88.     In response to paragraph 88, VWAG admits that, as reflected in the SOF, "VW AG engineers activated a 'steering wheel angle recognition' feature" "[t]o increase the likelihood that the vehicle in fact realized it was being tested on the dynamometer," and otherwise denies.  In response to paragraph 88, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

89.     In response to paragraph 89, VWAG admits that, as reflected in the SOF, in or about April 2013, VWAG implemented the activation of the "software underlying the steering wheel angle recognition function," and otherwise denies.  In response to paragraph 89, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

90.     In response to the first sentence of paragraph 90, VWAG admits that, as reflected in the SOF, certain VW employees "designed, created, and implemented a software function to detect, evade and defeat U.S. emission standards" and the "defeat device . . . recogniz[ed] the standard drive cycles used by U.S. regulators," and otherwise denies.  In response to the first sentence of paragraph 90, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.  In response to the second and third sentences of paragraph 90, Defendants state that they are explanatory statements by Plaintiff to which no response is required.  To the extent any response is required, Defendants deny.

B.     **The ICCT Study Threatens to Expose VW's "Clean Diesel" Fraud.**

91.     In response to the first and second sentences of paragraph 91, VWAG admits that, as reflected in the SOF, "[i]n or around March 2014, certain VW employees learned of the results of the" ICCT Study, and otherwise denies.  In response to the third and fourth sentences of paragraph 91, VWAG

-22-

admits.  In response to paragraph 91, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

92.     In response to paragraph 92, Defendants admit that it purports to refer to the ICCT Study, and respectfully refer the Court to this document for a complete and accurate description of its contents, and otherwise state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore deny.

93.     In response to paragraph 93, Defendants admit that paragraph 93 purports to quote from a January 13, 2017 article published in the *New York Times*, and respectfully refer the Court to the article for a complete and accurate description of its content.

94.     In response to paragraph 94, VWAG admits that, as reflected in the SOF, "[i]f the defeat device detected that the vehicle was not being tested, it operated in a different mode, in which the effectiveness of the vehicle's emissions control was reduced substantially, causing the vehicle to emit substantially higher NOx," and otherwise denies.  In response to paragraph 94, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

95.     In response to paragraph 95, VWAG denies.  In response to paragraph 95, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

96.     In response to the first sentence of paragraph 96, VWAG admits that, as reflected in the SOF, "[i]n or around March 2014, certain VW employees learned of the [ICCT study]," and otherwise denies.  In response to the second sentence of paragraph 96, VWAG admits that Oliver Schmidt was formerly the General Manager of VWGoA's Environmental and Engineering Office, and that it purports to characterize an email from an "Audi employee" to Oliver Schmidt and respectfully refers the Court to that email for a complete and accurate description of its contents, and otherwise denies.  In response to the third sentence of paragraph 96, VW admits.  In response to the first, second, and third sentences of paragraph 96, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.  In response to the fourth sentence of

-23-

SULLIVAN &
CROMWELL LLP

paragraph 96, Defendants admit that it purports to quote an email sent from an "Audi employee" to Oliver Schmidt, and respectfully refer the Court to that email for a complete and accurate description of its contents, and otherwise deny.

97.     In response to the first sentence of paragraph 97, VWAG admits that as stated in the SOF, certain VWAG employees and others discussed the potential risks related to the ICCT Study, and otherwise denies.  In response to the second sentence of paragraph 97, VWAG states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations, except admits that Gottweis, Neusser, Winterkorn, Schmidt, Nagel, and certain other VWAG employees were made aware of aspects of the ICCT Study, and otherwise denies.  In response to paragraph 97, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

98.     In response to the first sentence of paragraph 98, Defendants admit that it purports to characterize an email from Oliver Schmidt, and respectfully refer the Court to that email for a complete and accurate description of its contents.  In response to the second sentence of paragraph 98, Defendants admit that it purports to quote an email from Oliver Schmidt dated April 2, 2014, and respectfully refer the Court to that email for a complete and accurate description of its contents, and otherwise deny.

99.     In response to the first sentence of paragraph 99, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore deny.  In response to the second and third sentences of paragraph 99, Defendants admit that it purports to quote an email dated April 2, 2014, and respectfully refer the Court to that email for a complete and accurate description of its contents.

100.    In response to paragraph 100, Defendants admit, except to deny the characterization of Schmidt's indictment as being for his role in the "scheme," as the term is vague and undefined.

101.    In response to paragraph 101, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore deny.

102.    In response to paragraph 102, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore deny.

-24-

103.    In response to the first sentence of paragraph 103, VWAG admits that Bernd Gottweis was a member of VW's Product Safety Committee for a certain period of time, but otherwise states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.  In response to the second sentence of paragraph 103, VWAG admits that the Product Safety Committee at VW has been tasked with, at various times and among other things, reviewing and addressing various product safety and defect issues.  In response to the first and second sentences of paragraph 103, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.  In response to the third sentence of paragraph 103, Defendants admit that it purports to refer to and quote from an unidentified and undisclosed document and respectfully refer the Court to that document for a complete and accurate description of if contents, and otherwise deny.  In response to the fourth sentence of paragraph 103, VWAG admits that Winterkorn was the member of the Board of Management of VWAG responsible for Research and Development beginning in the early 2000s, and otherwise denies.  In response to the fourth sentence of paragraph 103, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

104.    In response to the first sentence of paragraph 104, VWAG admits that, as reflected in the SOF, "[f]ollowing the ICCT study, CARB in coordination with the EPA, attempted to work with VW to determine the cause for the higher NOx emissions in the 2.0-liter vehicles when being driven on the road as opposed to on the dynamometer."  In response to the second sentence of paragraph 104, VWAG admits that, as reflected in the SOF, "engineers in the VW Brand Engine Development department formed an ad hoc task force to formulate responses to questions that arose from U.S. regulators," and otherwise denies. In response to paragraph 104, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

105.    In response to paragraph 105, VWAG admits that, as reflected in the SOF, "engineers in the VW Brand Engine Development department formed an ad hoc task force to formulate responses to questions that arose from U.S. regulators" and certain VWAG supervisors and others "determined not to disclose to U.S. regulators that the tested vehicle models operated with a defeat device," and otherwise

ANSWER TO PLAINTIFF'S AMENDED COMPLAINT
CASE NO. 19-cv-01391; MDL No. 2672 CRB (JSC)

denies.  In response to paragraph 105, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

106.    In response to paragraph 106, VWAG admits that, as reflected in the SOF, certain VWAG supervisors and others "decided to pursue a strategy of concealing the defeat device in responding to questions from U.S. regulators, while appearing to cooperate" and that "U.S. regulators threatened not to certify VW model year 2016 vehicles for sale in the United States," and otherwise denies.  In response to paragraph 106, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

107.    In response to paragraph 107, Defendants admit that it purports to summarize a "Task Force Memo" and "Task Force Presentation," and respectfully refer the Court to the Task Force Memo and Task Force Presentation for a complete and accurate description of their contents, and otherwise deny.

108.    In response to paragraph 108, Defendants admit that it purports to summarize a "Task Force Presentation," and respectfully refer the Court to the presentation for a complete and accurate description of its contents, and otherwise deny.

109.    In response to paragraph 109, Defendants admit that it purports to quote a "Task Force Presentation," and respectfully refer the Court to the presentation for a complete and accurate description of its contents, and otherwise deny.

110.    In response to paragraph 110, VWAG denies, except admits that, as reflected in the SOF, "approximately 585,000 Subject Vehicles" were sold in the United States "from 2009 through 2015."  In response to paragraph 110, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

111.    In response to the first and second sentences of paragraph 111, Defendants admit that they purport to characterize an email dated April 15, 2014 from Oliver Schmidt, and respectfully refer the Court to that email for complete and accurate description of its contents, and otherwise deny.  In response to the third and fourth sentences of paragraph 111, VWAG admits that Gottweis was sometimes referred to in news articles as VWAG's "Fireman," and otherwise denies.  In response to the third and fourth sentences

of paragraph 111,  VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

112.    In response to paragraph 112, VWAG admits that, as reflected in the SOF, "[o]n or about April 28, 2014, members of the VW task force presented the findings of the ICCT study" and "[i]ncluded in the presentation was an explanation of the potential financial consequences VW could face if the defeat device was discovered by U.S. regulators, including but not limited to applicable fines per vehicle," and otherwise denies.  In response to paragraph 112, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

113.    In response to paragraph 113, Defendants admit that it purports to characterize an email from Oliver Schmidt dated May 15, 2014, which was prepared in German, and respectfully refer the Court to that email for a complete and accurate description of its contents, and otherwise deny.

114.    In response to paragraph 114, Defendants admit that it purports to characterize an email from Oliver Schmidt dated May 15, 2014, and respectfully refer the Court to that email for a complete and accurate description of its contents, and otherwise deny.

115.    In response to paragraph 115, Defendants admit that it purports to characterize an email dated May 19, 2014, and respectfully refer the Court to that email for a complete and accurate description of its contents, and otherwise deny.

116.    In response to the first and second sentences of paragraph 116, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore deny.  In response to the third sentence of paragraph 116, VWAG denies.  In response to the third sentence of paragraph 116, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

117.    In response to paragraph 117, Defendants admit that it purports to summarize emails dated May 20, 2014, and respectfully refer the Court to those emails for a complete and accurate description of their contents, and otherwise deny.

118.    In response to the first sentence of paragraph 118, Defendants admit that it purports to characterize an email from Oliver Schmidt dated May 20, 2014, and respectfully refer the Court to that

-27-

email for a complete and accurate description of its contents, and otherwise deny.  In response to the second sentence of paragraph 118, Defendants admit that it purports to characterize another email forwarded by Gottweis on May 20, 2014, and respectfully refer the Court to that email for a complete and accurate description of its contents, and otherwise deny.

119.    In response to paragraph 119, Defendants admit that it purports to quote and summarize a memo dated May 22, 2014, which was prepared in German, and respectfully refer the Court to the memo for a complete and accurate description of its contents, and otherwise deny.

120.    In response to paragraph 120, VWAG admits that Winterkorn was provided a May 22, 2014 memorandum along with a cover memorandum dated May 23, 2020, both of which were prepared in German, as part of his "weekend mail" on May 23, 2014, and respectfully refers the Court to the memorandum for a complete and accurate description of its contents, and otherwise denies.  In response to paragraph 120, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

121.    In response to paragraph 121, Defendants admit that it purports to summarize the contents of the "Winterkorn Memo," which was prepared in German, and respectfully refer the Court to the "Winterkorn Memo" for a complete and accurate description of its contents, and otherwise deny.

122.    In response to paragraph 122, VWAG admits that, as reflected in the SOF, after the ICCT Study was made known to certain VW employees, a "task force" was formed and those employees were also made aware of the ICCT Study, and otherwise denies.  In response to paragraph 122, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

123.    In response to paragraph 123, Defendants together admit that on July 21, 2014, Oliver Schmidt was listed as a presenter at an "Executive Team Meeting" or "ETM" and materials for the meeting included information on the ICCT Study, and otherwise denies.  In response to paragraph 123, VWAG separately admits that on or about July 7, 2014, a meeting was held in which certain members of the VW Product Safety Committee were scheduled to attend and Oliver Schmidt presented on various topics,

-28-

including the ICCT Study, but Defendants together state that they are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein, and therefore deny.

124.    In response to the first sentence of paragraph 124, VWAG admits that, as reflected in the SOF, following the ICCT study, "CARB, in coordination with the EPA, attempted to work with VW to determine the cause for the higher NOx emissions in the 2.0-liter vehicles when being on the road as opposed to on the dynamometer undergoing standard emissions test cycles," and otherwise denies.  In response to the second and third sentences of paragraph 124, VWAG admits that, as reflected in the SOF, certain VW supervisors and others "decided to pursue a strategy of concealing the defeat device in responding to questions from U.S. regulators, while appearing to cooperate," and otherwise denies.  In response to paragraph 124, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

125.    In response to the first sentence of paragraph 125, VWAG admits that on or about October 1, 2014 "VWAG employees presented to CARB regarding the ICCT Study and discrepancies identified in NOx emissions between dynamometer testing and road driving," and otherwise denies.  In response to the second and third sentences of paragraph 125, VWAG admits that, as reflected in the SOF, at the October 1, 2014 meeting, "[i]n response to questions" VWAG "employees did not reveal that the existence of the defeat device was the explanation for the discrepancies in NOx emissions" and "gave CARB various false reasons for the discrepancies in NOx emissions including driving patterns and technical issues," and otherwise denies.  In response to paragraph 125, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

126.    In response to the first sentence of paragraph 126, VWAG admits that, as reflected in the SOF, "[t]hroughout 2014 and the first half of 2015," certain VW supervisors and others offered "'fixes' and explanations to U.S. regulators for the 2.0L Subject Vehicles' higher NOx measurements on the road without revealing . . . the existence of software designed to detect, evade and defeat U.S. emissions tests," and otherwise denies.  In response to the second sentence of paragraph 126, VWAG admits that CARB and EPA agreed in December 2014 that VW could implement a software recall for 2.0-liter diesel vehicles

-29-

1  for which elevated levels of NOx were observed in real driving conditions.  In response to paragraph 126,

2  VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of

3  the allegations therein, and therefore denies.

4      127.  In response to the first and second sentences of paragraph 127, VWAG denies.  In response

5  to the first and second sentences of paragraph 127, VWGoAF states that it is without knowledge or

6  information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.  In

7  response to the third sentence of paragraph 127, Defendants admit that it purports to refer to a "Task Force

8  Presentation," dated April 2014, and the "Gottweis Memo," dated May 2014, and respectfully refer the

9  Court to these documents for a complete and accurate description of their contents, and otherwise deny.

10      128.  In response to paragraph 128, Defendants state that they are without knowledge or

11  information sufficient to form a belief as to the truth of the allegations therein, and therefore deny.

12      129.  In response to the first sentence of paragraph 129, Defendants state that they are without

13  knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore

14  deny.  In response to the second sentence of paragraph 129, VWAG admits that EPA authorized a software

15  recall of VW vehicles, and otherwise denies.  In response to the second sentence of paragraph 129,

16  VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of

17  the allegations therein, and therefore denies.

18      130.  In response to paragraph 130, VWAG admits that, as reflected in the SOF, "CARB . . .

19  repeatedly asked VW questions [about VW's diesel NOx emissions] that became increasingly more

20  specific and detailed," and otherwise denies.  In response to paragraph 130, VWGoAF states that it is

21  without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and

22  therefore denies.

23      131.  In response to the first sentence of paragraph 131, VWAG admits that U.S. regulators

24  continued to investigate VW vehicle emissions after the software update fix, and otherwise denies.  In

25  response to the second and third sentences of paragraph 131, VWAG admits that, as reflected in the SOF,

26  "[w]hen U.S. regulators threatened not to certify VW model year 2016 vehicles for sale in the United

27  States," certain VW employees "requested a briefing on the situation in the United States" and "[o]n or

28

-30-

SULLIVAN &
CROMWELL LLP

1  about July 27, 2015, VW AG employees presented to VW AG supervisors," and otherwise denies.  In

2  response to paragraph 131, VWGoAF states that it is without knowledge or information sufficient to form

3  a belief as to the truth of the allegations therein, and therefore denies.

4      132.    In response to the first sentence of paragraph 132, Defendants admit that it purports to

5  quote Winterkorn, and otherwise deny.  In response to the second sentence of paragraph 132, Defendants

6  are without knowledge or information sufficient to form a belief as to the truth of the allegations therein,

7  and therefore deny.  In response to the third sentence of paragraph 132, VWAG denies.  In response to the

8  third sentence of paragraph 132, VWGoAF states that it is without knowledge or information sufficient to

9  form a belief as to the truth of the allegations therein, and therefore denies.

10     133.    In response to paragraph 133, VWAG admits that, as reflected in the SOF, "[o]n or about

11 July 27, 2015 VW employees" "presented to VW AG executive management," and otherwise denies.  In

12 response to paragraph 133, VWGoAF states that it is without knowledge or information sufficient to form

13 a belief as to the truth of the allegations therein, and therefore denies.

14     134.    In response to paragraph 134, VWAG denies, except admits that, as reflected in the SOF,

15 VW representatives met with CARB during August 2015 and "did not reveal the existence of the defeat

16 device."  In response to paragraph 134, VWGoAF states that it is without knowledge or information

17 sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

18     135.    In response to paragraph 135, VWAG admits that, as reflected in the SOF, certain 2.0L

19 diesel vehicles "used different emissions treatment depending on whether the vehicles were on the

20 dynamometer or the road" was "explained, for the first time to U.S. regulators" at the August 19, 2015

21 meeting with CARB, and otherwise denies.  In response to paragraph 135, VWGoAF states that it is

22 without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and

23 therefore denies.

24     136.    In response to paragraph 136, VWAG admits that, as reflected in the SOF, VW "admitted

25 that VW had installed a defeat device in the 2.0 Liter Subject Vehicles" during the September 3, 2015

26 meeting with CARB and the EPA, and otherwise denies.  In response to paragraph 136, VWGoAF states

27

28

1    that it is without knowledge or information sufficient to form a belief as to the truth of the allegations

2    therein, and therefore denies.

3        137.    In response to the first and second sentences of paragraph 137, Defendants deny.  In

4    response to the third sentence of paragraph 137, VWAG admits that, as reflected in the SOF, a VWAG

5    attorney "made statements that several employees understood as suggesting the destruction of"

6    "documents relevant to diesel emissions issues," and otherwise denies.  In response to the third sentence

7    of paragraph 137, VWGoAF states that it is without knowledge or information sufficient to form a belief

8    as to the truth of the allegations therein, and therefore denies.

9        138.    In response to paragraph 138, VWAG admits that, as reflected in the SOF, "thousands of

10   documents were deleted by approximately 40 VW AG and Audi AG employees," and otherwise denies.

11   In response to paragraph 138, VWGoAF states that it is without knowledge or information sufficient to

12   form a belief as to the truth of the allegations therein, and therefore denies.

13       139.    In response to the first sentence of paragraph 139, Defendants admit that on September 18,

14   2015, the EPA issued a Notice of Violation ("NOV") of the Clean Air Act to VWAG, Audi AG and

15   VWGoA, and respectfully refer the Court to the NOV for a complete and accurate description of its

16   contents, and otherwise deny.  In response to the second sentence of paragraph 139, Defendants admit

17   that, in a statement issued on September 22, 2015, VWAG announced that there were discrepancies in

18   around 11 million vehicles worldwide with type EA 189 diesel engines, and respectfully refer the Court

19   to this statement for a complete and accurate description of its contents.  In response to the third sentence

20   of paragraph 139, Defendants admit that on November 2, 2015, the EPA issued a second NOV that

21   included 3.0 liter diesel vehicles that were not covered by the first NOV, and respectfully refer the Court

22   to the NOV for a complete and accurate description of its contents.

23       140.    In response to paragraph 140, Defendants admit that it purports to quote from a

24   September 20, 2015 statement by Winterkorn and respectfully refer the Court to the statement for a

25   complete and accurate description of its contents, and otherwise deny.

26

27

28

SULLIVAN &
CROMWELL LLP

141.     In response to paragraph 141, Defendants admit that it purports to quote a September 21, 2015 statement by Horn and respectfully refer the Court to the statement for a complete and accurate description of its contents, and otherwise deny.

142.     In response to paragraph 142, VWAG admits that Winterkorn and Gottweis either were suspended or resigned from their positions at Volkswagen Group by late September 2015, but VWAG states that it is without knowledge or sufficient information to form a belief as to the truth of the remaining allegations therein, and therefore denies.  In response to paragraph 142, VWGoAF states that is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

143.     In response to the first sentence of paragraph 143, VWAG admits that certain executives in the Engine Development and Quality Assurance departments were suspended subsequent to the NOV.  In response to the second sentence of paragraph 143, VWAG admits that Winterkorn resigned from his positions at VWAG, and states that VWAG is without knowledge or information sufficient to form a belief as to the truth of the allegation related to VWAG BOARD MEMBER 1, and otherwise denies.  In response to paragraph 142, VWGoAF states that is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

144.     In response to paragraph 144, Defendants admit that the United States Department of Justice brought criminal charges against VWAG, Winterkorn, Gottweis, Neusser, and Schmidt, and otherwise deny.

145.     In response to paragraph 145, Defendants admit that VWAG pled guilty to three criminal felony counts and that it purports to summarize the plea agreement entered in *United States* v. *Volkswagen AG*, No. 16-cr-20394 (E.D. MI.), and respectfully refer the Court to this document for a complete and accurate description of its contents, and otherwise deny.

146.     In response to paragraph 146, VWAG admits that, as reflected in the SOF, certain employees knew of the defeat device in 2012, and in 2015 a VWAG attorney "made statements that several employees understood as suggesting the destruction of . . . materials" related to VW's use of the defeat device in 2015, and otherwise denies.  In response to paragraph 146, VWGoAF states that it is without

-33-

1    knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore

2    denies.

3          147.     In response to the first sentence of paragraph 147, Defendants deny.  In response to the

4    second and third sentences of paragraph 147, Defendants admit that they refer to a May 2014 internal

5    memorandum and the 2014 VWAG Annual Report, and respectfully refer the Court to these documents

6    for a complete and accurate description of their contents, and otherwise deny.

7          148.     Denied.

8          149.     In response to paragraph 149, Defendants admit that it purports to characterize the Offering

9    Memoranda, financial statements and other offering documents prepared for and related to the three 144A

10    Bond Offerings, and respectfully refer the Court to these documents for a complete and accurate

11    description of their contents, and otherwise deny.

12          150.     Denied.

13          151.     Denied.

14          152.     In response to the first and second sentences of paragraph 152, Defendants admit that after

15    the September 18, 2015 NOV, the prices of certain VW bonds temporarily declined in the secondary

16    market, and otherwise deny.  In response to the third sentence of paragraph 152, Defendants admit that

17    after the September 18, 2015 NOV, certain ratings agencies initially downgraded their ratings of certain

18    VW debt, and otherwise deny.

19          153.     Denied.

20          154.     In response to paragraph 154, VWAG admits that in 2010 the VWAG Supervisory Board

21    authorized the VWAG Board of Management to increase the then existing scope of the debt and equity

22    financing framework and the VWAG Board of Management resolved to increase the then existing scope

23    of the debt and equity financing framework, and otherwise denies.  In response to paragraph 154,

24    VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of

25    the allegations therein, and therefore denies.  In further response to paragraph 154, Defendants admit that

26    it purports to refer to the March 23, 2010 Financing Framework Presentation prepared for the VWAG

27

28

ANSWER TO PLAINTIFF'S AMENDED COMPLAINT
CASE NO. 19-cv-01391; MDL NO. 2672 CRB (JSC)

Management Board, and respectfully refer the Court to this document for a complete and accurate description of its contents.

155.    In response to the first sentence of paragraph 155, VWAG admits that for the years 2010 through 2015 VWAG prepared and approved budgets reflecting VW's anticipated investments, and otherwise denies.  In response to the second sentence of paragraph 155, VWAG admits that VW allowed for the possibility of potential issuance and sale of bonds to fund its budgeted investments to the extent needed, and otherwise denies.  In response to the first and second sentences of paragraph 155, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.  In response to the third sentence of paragraph 155, Defendants state that it contains legal conclusions to which no response is required.

156.    In response to the first sentence of paragraph 156, Defendants admit that VWGoAF was formed in February 2014 to primarily issue VWAG-guaranteed debt in the U.S. market, and otherwise deny.  In response to the second sentence of paragraph 156, Defendants admit that VWGoAF has no employees of its own, and otherwise deny.  In response to the third sentence of paragraph 156, Defendants admit that, during the time of the 144A Bond Offerings, all officers and directors of VWGoAF were employees of VWAG, VWGoA or a VWAG affiliate.

157.    Denied.

158.    In response to paragraph 158, Defendants admit, except deny that VWAG issued and sold the 144A Bonds.

159.    In response to paragraph 159, Defendants admit that on or about the date of each 144A Bond Offering VWGoAF issued and VWAG guaranteed the bonds to Initial Subscribers, all but one of which was based in the United States, and that such bonds could only be sold to qualified institutional buyers ("QIBs"), and otherwise deny.

160.    In response to the first sentence of paragraph 160, Defendants admit.  In response to the second sentence of paragraph 160, Defendants state that it is an explanatory statement by Plaintiff to which no response is required.

Sullivan &
Cromwell llp

1    161.    In response to paragraph 161, Defendants admit, except deny that Underwriters submitted

2    due diligence questions and instead admit that Initial Subscribers submitted due diligence questions.

3    162.    In response to the first sentence of paragraph 162, Defendants state that it contains legal

4    conclusions to which no response is required.  To the extent that any response is required, Defendants

5    deny.  In response to the second sentence of paragraph 162, Defendants deny.

6    163.    In response to the first sentence of paragraph 163, Defendants admit that VWAG and

7    VWGoAF, with assistance from their legal advisors, prepared an Offering Memorandum for each of the

8    three 144A Bond Offerings, and otherwise deny.  In response to the second sentence of paragraph 163,

9    Defendants admit that it purports to refer to the Offering Memoranda prepared for the three 144A Bond

10   Offerings, and respectfully refer the Court to these memoranda for a complete and accurate description of

11   their contents.

12   164.    In response to the first sentence of paragraph 164, Defendants admit that, with respect to

13   the 144A Bond Offerings, in general, when preparing the Offering Memoranda, they used an offering

14   memorandum from an early bond offering, then reviewed and updated it, but state that in some

15   circumstances the process may have differed.  In response to the second sentence of paragraph 164,

16   Defendants admit.

17   165.    In response to the first and second sentences of paragraph 165, Defendants admit that, in

18   general, this was the process VWAG and VWGoAF used for updating the 144A Bond Offering

19   Memoranda, but state that in some circumstances the process may have differed.  In response to the third

20   sentence of paragraph 165, Defendants deny.  To the extent that any response is required, Defendants deny

21   that any misleading statements were contained within the 144A Offering Memoranda.

22   166.    In response to paragraph 166, Defendants admit that according to the charts identifying the

23   VW department assigned responsibility for certain sections of the Offering Memoranda, VW Group Legal

24   was assigned responsibility for certain statements, and respectfully refer the Court to these documents for

25   a complete and accurate description of their contents, and admit that paragraph 166 purports to refer to

26   the Offering Memoranda, and respectfully refer the Court to those documents for a complete and accurate

27   description of their contents, and otherwise deny.

28

-36-

SULLIVAN &
CROMWELL LLP

167.    In response to paragraph 167, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore deny.

168.    In response to the first sentence of paragraph 168, Defendants admit that according to the charts identifying the VW department assigned responsibility for certain sections of the Offering Memoranda, the VW Quality Assurance department was assigned responsibility for certain statements, and respectfully refer the Court to these documents for a complete and accurate description of their contents, and otherwise deny.  In response to the second sentence of paragraph 168, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore deny.  In response to the third sentence of paragraph 168, VWAG admits that Gottweis reported to Frank Tuch and that Gottweis was sometimes referred to in news articles as VWAG's "Fireman," and otherwise denies.  In response to the third sentence of paragraph 168, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

169.    In response to the first sentence of paragraph 169, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore deny.  In response to the second sentence of paragraph 169, Defendants admit that it purports to refer to the SOF and respectfully refer the Court to the SOF for a complete and accurate description of its contents, and otherwise deny.

170.    In response to the first sentence of paragraph 170, Defendants admit that it purports to refer to the Offering Memoranda prepared for the three 144A Bond Offerings, and respectfully refer the Court to these documents for a complete and accurate description of their contents.  In response to the second and third sentences of paragraph 170, Defendants admit that they purport to refer to charts identifying the VW department assigned responsibility for certain sections of the Offering Memoranda, and respectfully refer the Court to these charts for a complete and accurate description of their contents, and otherwise deny.

171.    Denied.

-37-

SULLIVAN &
CROMWELL LLP

172.    In response to paragraph 172, Defendants admit only to the extent that Defendants admit the allegations contained in paragraphs 164 through 171, and otherwise deny.

173.    Denied.

174.    Denied.

175.    Denied.

176.    Denied.

177.    Denied.

178.    Denied.

179.    In response to the first and second sentences of paragraph 179, Defendants admit that after the September 18, 2015 NOV the prices of certain VW bonds temporarily declined in the secondary market and certain ratings agencies initially downgraded their ratings of certain VW debt, and otherwise deny.  In response to the third sentence of paragraph 179, Defendants admit that VWGoAF did not issue any bonds in the United States between October 2015 and October 2018, and otherwise deny.

180.    Denied.

181.    In response to the first sentence of paragraph 181, Defendants admit.  In response to the second sentence of paragraph 181, Defendants admit that VWAG's Board of Management signed a "Responsibility Statement" for each of the audited financial statements appended to the Offering Memoranda, and respectfully refer the Court to the Offering Memoranda and the appended financial statements for a complete and accurate description of their contents, and otherwise deny.

182.    In response to the first and second sentences of paragraph 182, Defendants deny.  In response to the third sentence of paragraph 182, Defendants admit that English versions of VWAG's financial statements are published on its website accessible to United States investors and underwriters, and otherwise deny.

183.    In response to paragraph 183, Defendants admit that Winterkorn signed certifications to certain financial statements that were prepared independently of, but included within, the Offering Memoranda, and respectfully refer the Court to the Offering Memoranda for their complete and accurate contents, and otherwise deny.

1    184.    In response to paragraph 184, Defendants admit that it purports to reference information in the Offering Memoranda for the 144A Bonds issued on May 23, 2014, November 20, 2014, and May 22, 2015, and respectfully refer the Court to the Offering Memoranda for a complete and accurate description of their contents.

185.    In response to paragraph 185, Defendants state that it contains legal conclusions to which no response is required, except that Defendants admit that it refers to various laws and regulations, and respectfully refer the Court to those laws and regulations for a complete and accurate description of their contents.

186.    In response to the first sentence of paragraph 186, Defendants state that it contains legal conclusions to which no response is required, except that Defendants admit that it refers to various laws and regulations, and respectfully refer the Court to those laws and regulations for a complete and accurate description of their contents.  To the extent any response is required, Defendants deny.  In response to the second sentence of paragraph 186, Defendants admit that it purports to refer to the Notes to the Consolidated Financial Statements of the Volkswagen Group and respectfully direct the Court to the Notes for a complete and accurate description of their contents.  In response to the third sentence of paragraph 186, Defendants admit that it purports to quote from VWAG's Consolidated Financial Statements and respectfully refer the Court to VWAG's Consolidated Financial Statements for a complete and accurate description of their contents.

187.    In response to paragraph 187, Defendants state that it contains legal conclusions to which no response is required, except that Defendants admit that it refers to various laws and regulations, and respectfully refer the Court to those laws and regulations for a complete and accurate description of their contents.  To the extent that any response is required, Defendants deny.

188.    In response to paragraph 188, Defendants state that it contains legal conclusions to which no response is required, except that Defendants admit that it refers to various laws and regulations, and respectfully refer the Court to those laws and regulations for a complete and accurate description of their contents.  To the extent that any response is required, Defendants deny.

ANSWER TO PLAINTIFF'S AMENDED COMPLAINT
CASE NO. 19-cv-01391; MDL No. 2672 CRB (JSC)

189.     In response to paragraph 189, Defendants state that it contains legal conclusions to which no response is required, except that Defendants admit that it refers to various laws and regulations, and respectfully refer the Court to those laws and regulations for a complete and accurate description of their contents.  To the extent that any response is required, Defendants deny.

190.     In response to paragraph 190, Defendants state that it contains legal conclusions to which no response is required, except that Defendants admit that it refers to various laws and regulations, and respectfully refer the Court to those laws and regulations for a complete and accurate description of their contents.  To the extent that any response is required, Defendants deny.

191.     In response to paragraph 191, Defendants admit that it purports to quote from VWAG's financial statements and respectfully refer the Court to the financial statements for a complete and accurate description of their contents, and otherwise deny.

192.     Denied.

193.     Denied.

194.     Denied.

195.     Denied.

196.     In response to the first sentence of paragraph 196, Defendants admit that it refers to VWAG's 2015 Audited Financial Statements, and respectfully refer the Court to VWAG's 2015 Audited Financial Statements for a complete and accurate description of their contents.  In response to the second sentence of paragraph 196, VWAG admits.  In response to the second sentence of paragraph 196, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

197.     In response to the first sentence of paragraph 197, Defendants admit that it purports to quote VWAG's interim financial statements included in the November 2014 and May 2015 Offering Memoranda, and respectfully refer the Court to the interim financial statements for a complete and accurate description of their contents.  In response to the second and third sentences of paragraph 197, Defendants deny.

-40-

198.     In response to the first sentence of paragraph 198, Defendants admit, except deny that Underwriters submitted due diligence questions and instead admit that Initial Subscribers submitted due diligence questions.  In response to the second sentence of paragraph 198, Defendants state that it contains explanatory language to which no response is required.

199.     In response to paragraph 199, Defendants admit that it purports to refer to the first set of due diligence questions provided to VWAG and VWGoAF in connection with the 144A Bond Offerings, referred to as the "Management Due Diligence Questions" and the associated responses provided by VWAG and VWGoAF, and respectfully refer the Court to the Management Due Diligence Questions and the associated responses for a complete and accurate description of their contents.  In response to the second sentence of paragraph 199, Defendants admit.

200.     In response to paragraph 200, Defendants admit that it purports to refer to the second set of due diligence questions provided to VWAG and VWGoAF in connection with the 144A Bond Offerings, referred to as the "Bring Down Due Diligence Questions" and the associated responses provided by VWAG and VWGoAF, and respectfully refer the Court to the Bring Down Due Diligence Questions and the associated responses for a complete and accurate description of their contents.  In response to the second sentence of paragraph 200, Defendants admit.

201.     In response to paragraph 201, Defendants admit that VWAG and VWGoAF provided responses to Management Due Diligence Questions and Bring Down Due Diligence Questions for each of the 144A Bond Offerings on or around the dates identified in paragraph 201, and otherwise deny.

202.     In response to paragraph 202, Defendants admit that VWAG and VWGoAF used the same general process as they used for updating the Offering Memoranda for preparing its due diligence responses, but state that in some circumstances the process may have differed, and otherwise deny.

203.     In response to the first sentence of paragraph 203, Defendants admit that VWAG and VWGoAF used the same general process as they used for updating the Offering Memoranda for preparing its due diligence responses, but state that in some circumstances the process may have differed, and otherwise deny.  In response to the second sentence of paragraph 203, Defendants admit that specific responses were in general prepared, reviewed, and approved by the same departments as reviewed the

-41-

SULLIVAN &
CROMWELL LLP

sections of the Offering Memoranda covering the same topic, but state that in some circumstances the process may have differed, and otherwise deny.

204.    In response to paragraph 204, Defendants admit that the Group Legal department was involved in the preparation, review, and approval of responses to certain of the Management Due Diligence Questions, and otherwise deny.

205.    In response to paragraph 205, Defendants admit that the Group Legal department was involved in the preparation, review, and approval of responses to certain of the Management Due Diligence Questions, and otherwise deny.

206.    In response to paragraph 206, Defendants admit that the Quality Assurance department was, at times, involved in the preparation, review, and approval of responses to certain due diligence questions, and otherwise deny.

207.    In response to paragraph 207, Defendants admit that it purports to refer to the Management Due Diligence Questions and Bring Down Due Diligence Questions, and respectfully refer the Court to the Management Due Diligence Questions and Bring Down Due Diligence Questions for a complete and accurate description of their contents, and otherwise deny.

208.    In response to paragraph 208, Defendants admit that it purports to refer to the Management Due Diligence Questions and Bring Down Due Diligence Questions and the associated responses provided by VWAG and VWGoAF, and respectfully refer the Court to the Management Due Diligence Questions and Bring Down Due Diligence Questions and the associated responses for a complete and accurate description of their contents, and otherwise deny.

209.    Denied.

210.    In response to paragraph 210, Defendants admit that it purports to refer to the Bring Down Due Diligence Questions, and respectfully refer the Court to the Bring Down Due Diligence Questions for a complete and accurate description of their contents, and otherwise deny.

211.    In response to paragraph 211, Defendants admit that it purports to refer to the Bring Down Due Diligence Questions, and respectfully refer the Court to the Bring Down Due Diligence Questions for a complete and accurate description of their contents, and otherwise deny.

-42-

212.   In response to paragraph 212, Defendants admit that it purports to refer to the Bring Down Due Diligence Questions and the associated responses provided by VWAG and VWGoAF, and respectfully refer the Court to the Bring Down Due Diligence Questions and the associated responses for a complete and accurate description of their contents, and otherwise deny.

213.   Denied.

214.   In response to the first sentence of paragraph 214, Defendants admit except deny that Underwriters required VWAG and VWGoAF to enter into Subscriptions Agreements and instead admit that Initial Subscribers required VWAG and VWGoAF to enter into Subscriptions Agreements.   In response to the second sentence of paragraph 214, Defendants admit that it purports to reference subscription agreements prepared in connection with the 144A Bond Offerings and respectfully refer the Court to the subscription agreements for a complete and accurate description of their contents.

215.   In response to paragraph 215, Defendants admit that, VWAG and VWGoAF used the same general process as they used for updating the Offering Memoranda for preparing the subscription agreements, but state that in some circumstances the process may have differed, and otherwise deny.

216.   In response to the first sentence of paragraph 216, Defendants admit that, in general, VW Group Legal started with a finalized subscription agreement used in a prior bond offering, but state that in some circumstances the process may have differed.   In response to the second sentence of paragraph 216, Defendants admit that VW Group Legal was involved in the preparation of the 144A Bond Offering subscription agreements using information collected in the due diligence process, and otherwise deny.   In response to the third sentence of paragraph 216, Defendants deny.

217.   In response to paragraph 217, VWAG admits that it purports to refer to VWAG's risk management system and employee Code of Conduct, and respectfully refers the Court to these policies for a complete and accurate description of their contents, and otherwise denies.   In response to paragraph 217, VWGoAF states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies.

218.   Denied.

219.   Denied.

-43-

1     220.    Denied.

2     221.    Denied.

3     222.    To the extent a response to paragraph 222 is required, Defendants incorporate their

4 responses to paragraphs 1-221 as if set forth herein.

5     223.    Denied.

6     224.    Denied.

7     225.    To the extent a response to paragraph 225 is required, Defendants incorporate their

8 responses to paragraphs 1-224 as if set forth herein.

9     226.    Denied.

10     227.    Denied.

11     228.    To the extent a response to paragraph 228 is required, Defendants incorporate their

12 responses to paragraphs 1-227 as if set forth herein.

13     229.    Denied.

14     230.    Denied.

15     231.    Denied.

16     232.    To the extent a response to paragraph 232 is required, Defendants incorporate their

17 responses to paragraphs 1-231 as if set forth herein.

18     233.    Denied.

19     234.    Denied.

20     235.    In response to paragraph 235, Defendants state that it is an explanatory statement by

21 Plaintiff to which no response is required.

22     236.    To the extent a response to paragraph 236 is required, Defendants incorporate their

23 responses to paragraphs 1-235 as if set forth herein.

24     237.    Denied.

25     238.    Denied.

26     239.    Denied.

27     240.    Denied.

28

-44-

241.     To the extent a response to paragraph 241 is required, Defendants incorporate their responses to paragraphs 1-240 as if set forth herein.

242.     Denied.

243.     Denied.

244.     Denied.

245.     Denied.

Plaintiff's Amended Complaint contains an unnumbered paragraph with subparts 1 through 6 containing Plaintiff's prayer for relief, to which no response is required.  To the extent any response is required, Defendants deny that Plaintiff is entitled to any relief in this action.

Plaintiff's Amended Complaint contains an unnumbered paragraph containing Plaintiff's jury demand, to which no response is required.  To the extent any response is required, Defendants deny that Plaintiff is entitled to any relief in this action, thus no jury is required.

## AFFIRMATIVE DEFENSES

As separate defenses to the Amended Complaint and the causes of action asserted against Defendants therein (the "Causes of Action"), and without assuming the burden of proof on matters as to which they have no such burden, Defendants state as follows:

### FIRST DEFENSE

**(Failure to State a Cause of Action Upon Which Relief May be Granted)**

The Amended Complaint and the Causes of Action asserted therein fail to state facts sufficient to constitute a cause of action against Defendants.

### SECOND DEFENSE

**(No Causation)**

Any damages, loss, injury or violations of the securities laws alleged to have been caused by Defendants were directly and proximately caused by the conduct or fault of third parties for whose conduct Defendants are not responsible, not by the conduct of Defendants or its officers, directors, or employees.

-45-

**THIRD DEFENSE**

**(No False or Misleading Statements of Material Fact or Omissions)**

Plaintiff is not entitled to any recovery because the documents quoted in the Amended Complaint did not contain any untrue statement of material fact, and did not omit to state any material fact required to be stated or necessary to make the statements made not misleading.

**FOURTH DEFENSE**

**(No Money or Property Obtained By Means of False or Misleading Statement)**

Plaintiff's claims are barred, in whole or in part, because Defendants did not obtain money or property by means of any allegedly misleading statement or omission identified in the Amended Complaint. The allegedly false or misleading statements identified in the Amended Complaint were not a mechanism by which Defendants obtained money or property and there is no causal connection between the allegedly false or misleading statements made by the Defendants and any money or property that Defendants received.

**FIFTH DEFENSE**

**(No Duty)**

Plaintiff's claims are barred, in whole or in part, because Defendants had no fiduciary or other similar relationship of trust and confidence with purchasers of the Bond Offerings, and neither owed nor breached any duty to disclose information allegedly omitted from the Offering Memoranda or from any statement alleged in the Amended Complaint, and had no duty to verify, opine upon, audit, review or correct such information.

**SIXTH DEFENSE**

**(Immateriality)**

Plaintiff's claims are barred, in whole or in part, because the allegedly untrue statements of material fact and/or omissions of material fact were not material to the investment decisions of a reasonable investor.

SULLIVAN &
CROMWELL LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SEVENTH DEFENSE**

**(Non-Actionable Statements)**

Plaintiff's claims are barred, in whole or in part, because the alleged misstatements are non-actionable statements that contain expressions of opinion that were truly held at the time they were made.

**EIGHTH DEFENSE**

**(Lack of Personal Jurisdiction)**

Plaintiff's claims are barred, in whole or in part, because this Court lacks personal jurisdiction over VWAG and Winterkorn.

**NINTH DEFENSE**

**No False and Misleading Statements)**

Plaintiff's claims are barred, in whole or in part, because Defendants did not make, or play any role in the making of, certain of the statements alleged in the Amended Complaint to be false and misleading.

**TENTH DEFENSE**

**(Lack of Control over VWGoAF)**

Plaintiff's claims are barred, in whole or in part, because VWAG and Winterkorn did not have control over VWGoAF as the term "control" is defined in the federal securities laws and regulations, and did not participate in their public statements alleged in the Amended Complaint as false and misleading.

**ELEVENTH DEFENSE**

**(Lack of Control over VWAG)**

Plaintiff's claims are barred, in whole or in part, because Winterkorn did not have control over VWAG as the term "control" is defined in the federal securities laws and regulations, and did not participate in VWAG's public statements alleged in the Amended Complaint as false and misleading.

-47-

**TWELFTH DEFENSE**

**(Good Faith)**

Plaintiff's claims are barred, in whole or in part, because Defendants acted in good faith, including reasonably relying upon the advice of others.

**THIRTEENTH DEFENSE**

**(No Civil Penalties or Equitable Remedies Available)**

The Amended Complaint fails to allege facts sufficient to support the imposition of civil penalties or equitable remedies against Defendants.

**FOURTEENTH DEFENSE**

**(No Likelihood of Future Violation)**

The relief requested in the Amended Complaint is inappropriate, in whole or in part, because the Amended Complaint fails to allege a reasonable likelihood of future violations by Defendants.

**FIFTEENTH DEFENSE**

**(Inadmissible Evidence)**

Evidence in support of Plaintiff's allegations and claims is inadmissible pursuant to Rule 408 of the Federal Rules of Evidence.

**SIXTEENTH DEFENSE**

**(Unclean Hands)**

Plaintiff's claims are barred because Plaintiff acted wrongfully, willfully, in bad faith, with gross negligence, and with unreasonable delay in investigating and prosecuting this Action.

**SEVENTEENTH DEFENSE**

**(Disgorgement Not Available)**

The relief requested in the Amended Complaint is inappropriate, in whole or in part, because Defendants have been disgorged of any ill-gotten gains associated with sales of Subject Vehicles in the United States.  *See, e.g.*, VWAG Plea Agreement, *United States* v. *Volkswagen AG*, No. 16-cr-20394 (E.D. MI.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### EIGHTEENTH DEFENSE

### (Reservation of Rights)

Defendants reserve the right to raise any additional defenses, counterclaims, cross claims, and third-party claims not asserted herein of which they may become aware through discovery or other investigation, and will amend or modify their answer accordingly. Defendants further reserve the right to withdraw defenses that they determine are not applicable during the course of discovery and other proceedings in this action.

### PRAYER FOR RELIEF

WHEREFORE, Defendants pray for judgment as follows:

1. That judgment be entered in favor of Defendants;

2. That Plaintiff take nothing by reason of the claims and Causes of Action asserted herein;

3. That the Amended Complaint, and the Causes of Action against Defendants, be dismissed with prejudice;

4. For Defendants' costs of suit, including attorneys' fees incurred in defense of this action; and

5. For such other and further relief as the Court may deem just and proper.


Dated:   October 16, 2020

*/s/ Robert J. Giuffra Jr.*
Robert J. Giuffra, Jr. (*admitted pro hac vice*)
Sharon L. Nelles (*admitted pro hac vice*)
Suhana S. Han (*admitted pro hac vice*)
Matthew A. Schwartz (*admitted pro hac vice*)

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:     (212) 558-4000
Facsimile:      (212) 558-3588
*Attorneys for Defendants Volkswagen AG and*
*Volkswagen Group of America Finance, LLC*

-49-

1

**ATTESTATION (CIVIL LOCAL RULE 5-1(i)(3))**

2

        In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this

3

document has been obtained from the signatory.

4

Dated:  October 16, 2020                SULLIVAN & CROMWELL LLP

5

6

                          */s/ Robert J. Giuffra Jr.*
                          Robert J. Giuffra, Jr. (*admitted pro hac vice*)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-50-

SULLIVAN &
CROMWELL LLP