January 13, 2023

VIA ECF

Hon. Alex G. Tse
United States Magistrate Judge
United States District Court for the
Northern District of California, San Francisco Division
450 Golden Gate Avenue
San Francisco, California 94102

Re:   *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, MDL No. 2672 CRB & *SEC* v. *Volkswagen AG et al.*, No. 19-cv-01391

Dear Judge Tse:

## I. Statement of the Dispute Requiring Resolution

Plaintiff U.S. Securities and Exchange Commission ("SEC") and Defendants Volkswagen AG ("VWAG") and Volkswagen Group of America Finance, LLC (collectively, "VW") jointly submit this letter to address a discovery dispute between them. The dispute concerns whether VW must produce current employee Thorsten Duesterdiek for a deposition.[1]  The parties respectfully request the Court's permission to submit this letter exceeding its page limitations.  The issues presented here involve the application of a multi-factor legal test to the relevant facts.  The parties believe the extra pages are necessary to address these issues.

## II. Summary of Plaintiff's Position

VW must produce Thorsten Duesterdiek, a current and long-time department "head" and "manager" at VW, for a deposition because he is and was a "managing agent" of VW. He had extensive involvement in all aspects of VW's defeat device fraud; and he knows and can testify that some VW employees who worked on the Bond Offering documents were also aware of certain material facts the SEC alleges were omitted from the Bond Offering documents. Moreover, he has a cooperation agreement with VW that ***requires*** him to provide information about the diesel fraud.

VW argues that Dueseterdiek is not a "managing agent," that he had no involvement in preparing the Bond Offering documents, that he intends to invoke his right under the Fifth Amendment not to testify, and that its cooperation agreement with him does not require him to cooperate in this civil court proceeding. None of these arguments has merit. But, as a compromise, the SEC offered to allow Duesterdiek to assert his rights against self-incrimination through a sworn

---

[1]     On August 11, 2020, the SEC requested that VW make Duesterdiek (and other employees) available for deposition. On July 30, 2021, VW confirmed that Duesterdiek would sit for a deposition. On September 20, 2021, the SEC asked VW to provide dates for the depositions of Duesterdiek and several other VW employees. Then, on or about March 25, 2022, SEC counsel again asked VW's counsel to schedule Mr. Duesterdiek's deposition. It was then that VW's counsel first notified the SEC that Duesterdiek was no longer available for a deposition because his personal attorney objected to it because Duesterdiek was facing a criminal charges in Germany.

declaration, provided the declaration is admissible and can be used for all the same reasons as a deposition transcript. VW has rejected this approach too.

### A. Duesterdiek's Pivotal Roles at VW and in VW's Defeat Device Fraud

Thorsten Duesterdiek has been employed by VW for over 25 years. (Ex. A, Apr. 20, 2016 Duesterdiek Agrmt., Preamble, at 1.) Beginning on December 1, 2012, he served as VW's "head of the low emissions engines and exhaust aftertreatment department" for diesel engines in VW's Engine Development department. (*Id.*) As the "manager of diesel aftertreatment," he was "responsible for diesel engine development." (Ex. B, S. Johnson 8-23-22 Dep. at 32; Ex. C, S. Johnson 10-4-17 Dep. at 220; Ex. D, S. Johnson 8-8-17 Dep. at 53; Ex. E, Pltf. Dep. Ex. 67.) VW admits Duesterdiek knew played a central role in its near-decade long defeat device fraud. (*See, e.g.*, Ex. F, VW's Apr. 21, 2022 German Court Filing p. 86 at ¶ 208, p. 86, ¶¶ 465-66 at p.188-89, ¶¶ 485-89 at p.195-98.[2]) Former VW engineer James Liang, who went to prison because of his involvement in the defeat device fraud, "reported directly … to Thorsten Duesterdiek and took his orders from Thorsten Duesterdiek." (Ex. D, at 52-53.)

After researchers working with the International Council for Clean Transportation ("ICCT") revealed in March 2014, that two of Volkswagen's "Clean Diesel" cars emitted harmful NOx emissions well above legal limits, VW quickly assembled a ten-member "ad hoc task force" ("Task Force") that was given the responsibility of "formulat[ing] responses to questions that arose from U.S. regulators." (*See* Ex. G, Plea SOF ¶ 54; Ex. H, VW Resp. to Second RFAs No. 11.) Deusterdiek was "the head of the Task Force. (Ex. F, ¶¶ 631-32 at p. 253-54; Ex. H, No. 11.) In April 2014, Duesterdiek and the Task Force prepared an internal memo and PowerPoint ("Task Force Memo") admitting: (i) about 600,000 diesel cars sold in the United States were affected; (ii) VW's financial exposure exceeded $20 billion; and (iii) the cars' emissions levels could not be fixed to comply with legal limits. (Ex. I, Task Force Memo; Ex. G, ¶ 54, 56.) These are some of the very facts the SEC alleges VW omitted from its Bond Offering documents ("Omitted Facts").

In late April 2014, Duesterdiek and other members of the Task Force met with Winterkorn's confidant, Bernd Gottweis, to go over the Task Force Memo. At the meeting, Gottweis said he would tell Winterkorn. For the next 18 months, Duesterdiek helped VW hide from U.S. regulators the true cause of the emissions failures. (Ex. F, ¶¶ 612-14 at p. 244-45, ¶ 645 at p. 256, ¶ 911 at p. 358.)

Although Duesterdiek might not have assisted in preparing the Bond Offering documents, he can testify that other VW employees who did review and help prepare the Bond Offering documents, such as former VW employees Juergen Peter and Oliver Schmidt, knew all or some of the Omitted Facts. Peter was also a member of the Task Force, which prepared the internal Task Force Memo at the end of April 2014—a month before the first Bond Offering (May 23, 2014). (Ex. H, No. 11.) After the defeat device scandal became public, Peter became "persona non grata" at VW because of the belief he "was closely connected to the U.S. diesel issue [*i.e.*, 'the defeat device']." (Ex. J, Postel 8-16-22 Dep. at 152-53; Ex. D, S. Johnson Dep. at 159-64 (testifying that by August 2015, Johnson concluded there "was probably a good chance that [Peter] was aware of

---

[2] The English language translation of VW's Apr. 21, 2022 German Court Filing is 537 pages. Thus, the SEC is attaching as Ex. F only the specific pages cited.

the defeat device" and that Peter, Schmidt, and Duesterdiek had all been "deceiving" him).) Oliver Schmidt, who also worked on the Bond Offering documents, was one of the very first VW employees to learn of the ICCT Study results. (Ex. K, Nagel 3-31-14 Email to Schmidt (with attachments).) Schmidt knew the results were "not good" for VW. On April 2, 2014, two days after learning about the ICCT Study result, Schmidt sent an email to a VW colleague stating that now was not the time for VW to come clean. "If we are not honest," Schmidt calculated, "everything stays as it is." (Ex. L, Schmidt 4-2-14 Email to Zirwes.) When others at VW began asking questions about the ICCT Study in May 2014, Schmidt sent them to Duesterdiek. (Ex. M, Schmidt 5-20-14 Email to Krebs.)

### B. Duesterdiek, now the "Head" of VW's Quality Field Analysis Department, Signs A Cooperation Agreement with Volkswagen.

After VW's defeat device fraud became public, VW made Duesterdiek the "Head of QS Field Analysis Department NQ-SP," where he serves as a "manager in VW's Quality Assurance department." (*See* VW's Position, *infra*, § III.) "He's the head of the office." (Ex. J, at 88-89.) VW also signed him up to a cooperation agreement, which requires him to sit for interviews and answer questions about the diesel fraud. Duesterdiek's obligations include: (i) a duty to "be available" both during "interviews [by VW]" and "outside [of] interviews"; and (ii) "the obligation to appear in court and provide information on the matter at the request of [VW] in civil court proceedings involving [VW] and/or other companies in the Volkswagen Group." (Ex. N, 8-15-2017 Coop. Agrmt. § 1(2).)

### C. Argument

#### 1. Duesterdiek is a Managing Agent of VW.

Under Federal Rule of Civil Procedure 30, a party may request the deposition of another party to the litigation by serving a notice upon that party. Fed.R.Civ.P. 30(b)(1).[3] "'However, a corporate employee or agent who does not qualify as an officer, director, or managing agent is not subject to deposition by notice.'" *In re Lithium Ion Batteries*, 2015 WL 5440789, at *5 (*quoting United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)). Courts consider several factors to determine whether a witness is a "managing agent," including:

> (1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; (2) whether the individual

---

[3] VW's claim (*infra*, p. 7) that the SEC must try to secure Duesterdiek's deposition through international agreements with Germany is wrong and has been rejected by the Supreme Court. *Societe Nationale Industrielle Aérospatiale v. United States Dist. Court*, 482 U.S. 522, 535 n.19, and 542 (1987); *Peter Brasseler Holdings, L.P. v. GEBR. Brasseler GMBH & Co.*, 2007 WL 9706827, at *1 (S.D. Ga. June 28, 2007). Moreover, the SEC's attempts to obtain testimony through various international agreements with Germany in this case and others, including pursuant to the Hague Evidence Convention, have been rejected by Germany. (*See* Ex. O, Sept. 13, 2022 Letter (English Transl'n) from Germany's Fed'l Dept. of Justice, at 2; Ex. P, July 18, 2022 Letter (English Transl'n) from German Fed'l Dept. of Justice in *SEC v. Rayat*, 1:21-cv-04777 (S.D.N.Y)).

can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; (3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; and (4) the general responsibilities of the individual *respecting the matters involved in the litigation*.

*Elasticsearch, Inc. v. Floragunn*, GMBH, 2021 WL 1753796, at *1 (N.D. Cal. May 4, 2021) (emph. in orig.) (*quoting In re Lithium Ion Batteries*, 2015 WL 5440789, at *5 (N.D. Cal. Sept. 15, 2015)). "[T]he question of whether a particular person is a 'managing agent' is to be answered pragmatically, on an *ad hoc* basis, considering the facts of the particular case." *In re Lithium Ion Batteries*, 2015 WL 5440789, at *5 (*quoting Calderon v. Experian Info. Sols., Inc*., 287 F.R.D. 629, 632 (D. Idaho 2012)). At least as to whether the deposition should be allowed, courts consider "the witness's likely identification with the interests of the employer" to be the "'paramount test.'" *Id*. (allowing depositions of employees of defendant's sister corporation because they were more likely to identify with the interests of the "corporation which provided them with their livelihood").

The moving party's burden on this issue is "a modest one." *Calderon*, 287 F.R.D. at 632-33; *Adobe Sys. Inc. v. A & S Elecs., Inc*., 2016 WL 8222618, at *2 (N.D. Cal. June 30, 2016). "At the discovery stage, all doubts are to be resolved in favor of the party seeking discovery." *Elasticsearch,* 2021 WL 1753796, at *2 (internal quote omitted). "[A] 'close question' … should be resolved in favor of allowing the deposition, with the final determination of whether the agent has the ability to bind the corporation to be left for trial." *Id*.

The SEC easily satisfies its "modest" burden here. *First*, both at the time of the relevant events and now, Duesterdiek was and is a department "head" and "manager" at VW. Until 2016, he was the "head of the low emissions and exhaust after-treatment department" for diesel engines within VW's Engine Development department and was "responsible for diesel engine development." (*Supra*, at 2.) The employees in Deusterdiek's department "took [their] orders" from him. (*Id*.) He was the "head" of VW's Task Force and given responsibility for developing VW's responses to the questions from U.S. regulators. (*Id*.) Even now, he is "the head of QS Field Analysis" and a "manager in [VW's] Quality Assurance Department." (*Id.* at 4.) At a minimum, the question is close enough that all doubts should be resolved in favor of allowing his deposition.

*Second*, he can be expected to follow VW's instructions. VW continues to employ and pay him despite his involvement in the underlying defeat device fraud. Also, VW entered into a cooperation agreement with him that requires him to appear and answer questions at "outside interviews" and in "civil court proceedings" relating to VW's defeat device.

VW claims that Duesterdiek maintains he would be unwilling to testify at a deposition. (VW Section, infra, III.B.) But that is not what his lawyer has said. Rather, Duesterdiek's lawyer stated only that Duesterdiek is "opposed to being deposed ***voluntarily***" in this case. (*See* Nov. 28, 2022 Ltr. from Philip Inglima, attached as Ex. Q, at 1 (emph. added).) However, the mere fact Duesterdiek has said "I don't ***want*** to participate in the deposition" does not mean "[he] would remain unwilling to appear if [VW] was required to produce [him]." *Elasicsearch,* 2021 WL 1753796, at *2 (emph. added) (ordering defendant to produce for deposition foreign "freelance programmers" who said he did not "want to participate in the deposition"). Here, Duesterdiek's

lawyer has indicated that he would cooperate "if compelled to testify." *Id*. at 2 ("When you asked me whether Mr. Duesterdiek would prefer to be deposed or to submit sworn written responses to any questions directed to him in this proceeding, I indicated the latter – but my response assumed the context of an order compelling my client's testimony, not a consensual testimonial act.").

Also, attaching an opinion from a German lawyer, VW claims that his cooperation agreement does not clearly state that it applies to "foreign" proceedings and, thus, under purported German law, it should be construed to apply only to cases in Germany. This argument is meritless, as explained in the attached declaration from German attorney Dr. Dirk Freihube, a prominent labor partner with the GOERG law firm in Germany. (Ex. R.) As explained by Dr. Freihube, multiple provisions in the cooperation agreement make clear the parties contemplated and agreed that it would apply to foreign as well as German proceedings. (*Id*. ¶ 13 *et seq*.) For example, Section 1(4) requires Duesterdiek to "maintain secrecy regarding all confidential facts to which he has become or later becomes privy out of … the occasion of German and/or *foreign* proceedings." (*Id*.; emph. added.) Similarly, in Section 6, VW agrees to reimburse Duesterdiek for all costs he incurs making states to "[DOJ] (or, if he is examined **by another U.S. authority**, **to that authority**)" or as a result of his "**participation in examinations** by the DOJ **or by another U.S. authority**." (*Id*. ¶ 14; emph. added.) The agreement thus clearly contemplates his participation in U.S. hearings and questioning by U.S. authorities other than DOJ.[4]

*Third*, the SEC is not yet aware of—and VW has not identified—any other more senior employee who was so deeply and directly involved at all stages of the defeat device fraud **and** who can testify that others involved in the Bond Offerings knew about the Omitted Facts. VW improperly tries to narrow the scope of permissible deponents to only those employees who helped prepare "the statements VW made in connection with the Bond Offerings." (VW Section, *infra*, at 8-9.) That however is, at most, only half of what is at issue in this case. As VW squarely acknowledged in the Joint Case Management Statement filed at the outset of this case (Dkt. 16), a key issue here is "whether the individuals involved in the preparation of the 144A Bond Offering document … knew of the existence of the defeat device or of the potential legal and regulatory consequences of the defeat device, including the extent of remediation costs or penalties, at the time of each offering." (*Id*. at 12.) **That** is a key "area [for] which information is sought by the examination" of Thorsten Duersterdiek. *See Elasticsearch*, 2021 WL 1753796, at *1.

*Fourth*, as noted above, Duesterdiek's general responsibilities mean he is uniquely positioned to testify about all aspects of the defeat device fraud, including which VW employees knew about the defeat device and other Omitted Facts. *See In re Lithium Ion Batteries*, 2015 WL 5440789, at *5-6; *Calderon*, 287 F.R.D. at 634. Thus, even if Duesterdiek is not considered a managing agent of VW generally, "[he is] considered such an agent for the purpose of giving testimony on a particular topic." *Elasticsearch*, 2021 WL 1753796, at 3 (quote and cites omitted).

---

[4] The SEC's right to depose Duesterdiek as a "managing agent" is based on U.S. law, and does not depend on whether or not his cooperation agreement expressly contemplates his agreement to sit for a deposition as part of a U.S. court case. Even if there were no cooperation agreement at all, he still would be required to sit for a deposition because he is a "managing agent" of VW. The existence of the cooperation agreement, however, strongly supports the SEC's position that Deusterdiek's interests are more closely aligned—and contractually so—with VW, his employer.

*Finally*, the "paramount test"—whether the witness identifies with the interests of the company—also supports allowing Duesterdiek's deposition. He has worked for VW for over 25 years. He currently is "the head of QS Field Analysis," a "manager in [VW's] Quality Assurance Department," and he has a cooperation agreement with VW. He, thus, can be expected to identify with the interests of VW, his employer. *See In re Lithium Ion Batteries,* 2015 WL 5440789, at *6.

### 2. Neither the Fact that Duesterdiek is Facing Criminal Charges nor German Law Supply a Basis for Denying his Deposition.

It is irrelevant that Duesterdiek is facing criminal charges in Germany and might invoke a right not to answer questions. A witness cannot simply decline to give testimony until his criminal proceeding is concluded. *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995) ("Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates [the witness's] invocation of the Fifth Amendment privilege."). And the fact that a witness intends to invoke his Fifth Amendment rights is not grounds for denying the deposition. *State Farm Mutual Automobile Ins. Co. v. Elite Health Ctrs., Inc.*, 2019 WL 2493059, at *2 (E.D Mich. June 14, 2019).

Nor does German law bar this Court from ordering Deusterdiek's deposition, as VW wrongly claims. German companies choosing to do business in the U.S. must comply with U.S. discovery obligations when their actions lead to U.S. lawsuits. *Work v. Bier*, 106 F.R.D. 45 (D.D.C. 1985) (ordering German employees' depositions despite argument that German law barred depositions.) Foreign laws "do not deprive an American court of the power to order a party to produce evidence under the Federal Rules, although the production of the evidence may violate that statute and subject the defendant to penalties" in his home country. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 2008 WL 81111, at * 6 (S.D. Cal. Jan. 8, 2008) (ordering depositions of Brazilian nationals even though Brazilian law did not permit depositions in Brazil); *Graco, Inc. v. Kremlin, Inc.*, 101 F.R.D. 503 (N.D. Ill. 1984) ("The [French] Blocking Statute is not [plaintiff's] problem, and it is not the court's problem; it is [the French defendant's] problem."). In any event, assuming he will assert the Fifth Amendment in response to all questions, nothing about German law precludes Duesterdiek from doing so by way of a declaration, provided it will be admissible to the same extent as his sworn deposition testimony.

### 3. Duesterdiek's Deposition is Not "Unreasonably Cumulative."

The SEC's request to obtain Mr. Duesterdiek's sworn testimony during discovery, which could also be used at trial, is neither "unreasonably cumulative" nor inappropriate. Under Rule 26(b)(2)(C), "discovery [may be] curtailed upon a showing that it is <u>unreasonably</u> cumulative or duplicative." *Reno v. Western Cab Co.*, 2019 WL 6310716, at *4 (D. Nev. Nov. 25, 2019) (Emph. in orig.). Parties, however, are "permi[tted] to obtain document-based discovery and deposition testimony on the same subject." *Id*. They can even "seek the same evidence from different sources within the same case in order to test veracity and completeness and to uncover contradictory information." *State Farm*, 2019 WL 2493059, at *2. The SEC does not have to accept as true the testimony of other witnesses, especially since they have an incentive to deny knowledge of or involvement in VW's fraud.

**III.     VW's Position:**

This is a motion to compel *VW* to obtain Mr. Duesterdiek's testimony. As the SEC knows, and as Mr. Duesterdiek's counsel has directly informed the SEC, Mr. Duesterdiek—whose criminal trial in Germany is underway and who faces criminal exposure in the United States—"has no intention or desire to voluntarily provide sworn answers in any setting, including through a declaration." (Ex. Q at 2.) Under German law, VW cannot force him to be deposed or discipline him for his refusal to leave Germany to sit for a U.S. deposition.[5] And even if VW could force Mr. Duesterdiek to appear (it cannot), his counsel has advised the SEC that he would invoke his right against self-incrimination under both German law and the Fifth Amendment in response to any questions. (*Id.* at 1–2.) If the SEC wants to obtain substantive testimony from Mr. Duesterdiek, the SEC should try to serve a subpoena on him through the appropriate procedures under German law.[6] The SEC claims that such procedures would be futile, but the SEC has not even tried to follow those procedures. Instead, the SEC has moved to compel *VW* to produce Mr. Duesterdiek, even though VW cannot force him to testify, because the SEC wants to try to lay the foundation for obtaining unwarranted sanctions, including adverse inferences, *against VW*. The Court should deny the SEC's motion for at least three separate and independent reasons.

*First*, because Mr. Duesterdiek is not *currently* an officer, director or managing agent of VW, the Court cannot compel VW to produce him for a deposition. The managing agent inquiry looks to a proposed witness' position, responsibilities and authority "respecting the subject matter of the litigation" at "*the time of deposition*." *Symantec Corp.* v. *Acronis, Inc.*, 2013 WL 503612, at *4 (N.D. Cal. Feb. 8, 2013); *Int'l Swimming League, Ltd.* v. *Fed'n Int'l de Natation*, 2021 WL 629493, at *2 (N.D. Cal. Jan. 13, 2021) (emphasis added) (quotation omitted). Mr. Duesterdiek's current role as Head of QS Field Analysis Department NQ-SP has nothing to do with "the subject matter of the litigation," specifically, statements made in connection with three Rule 144A Bond Offerings ("Bond Offerings") that the SEC alleges were materially false or misleading.

*Second*, Mr. Duesterdiek is not a managing agent of VW because he cannot "be relied upon" by VW "to give testimony . . . at [VW's]'s request . . . in response to the demand of the [SEC]." *Elasticsearch, Inc.* v. *Floragunn GmbH*, 2021 WL 1753796, at *1 (N.D. Cal. May 4, 2021) (Tse, M.J.). To the extent that Mr. Duesterdiek initially expressed a willingness to be deposed over a year ago, he has since consistently refused VW's request that he appear for a

---

[5]   For the SEC to take a U.S.-style deposition, Mr. Duesterdiek must be deposed outside of Germany because German law forbids U.S.-style depositions in Germany, or any depositions by U.S. litigants unless proper procedures are followed, including under relevant treaties. The SEC has not attempted to obtain a deposition in Germany under such procedures.

[6]   Misreading *Societe Nationale Industrielle Aérospatiale*, the SEC incorrectly claims that it need not use "international agreements with Germany" to depose Mr. Duesterdiek. (Pl. Position at 3 n.3.) If Mr. Duesterdiek were a VW managing agent, the SEC could notice his deposition under Rule 30. *See Elasticsearch, Inc.*v. *Floragunn GmbH*, 2021 WL 1753796, at *1 (Tse, M.J.). But because he is not a managing agent, the SEC "**must utilize the procedures of the Hague Convention or other applicable treaty** to secure [Mr. Duesterdiek's] attendance." *Id.* (emphasis added) (quotation omitted).

deposition, invoking his right against self-incrimination under both German and U.S. law. (*See* Ex. Q at 1.) As one of Germany's preeminent labor law experts, Prof. Dr. Gregor Thuesing, explains, VW has no ability under German law to force Mr. Duesterdiek to travel outside of Germany to testify under oath at a U.S. deposition taken by the SEC. (Ex. S.) Mr. Duesterdiek did enter into a cooperation agreement with VWAG, but VWAG cannot discipline Mr. Duesterdiek or take adverse employment action against him for his unwillingness to sit for an SEC deposition or provide written testimony. (Ex. S at 22.) The SEC misreads a letter from Mr. Duesterdiek's U.S. counsel to suggest that he would consent to being deposed if VW were compelled to produce him. The letter is clear that Mr. Duesterdiek would only appear at a deposition "[i]f ***he*** were compelled to testify," (Ex. Q at 1 (emphasis added)), through German law procedures, which the SEC has not tried to invoke.

*Finally*, the Court should not compel VW to produce Mr. Duesterdiek for a deposition—which VW cannot do—because the testimony the SEC requests is not proportional to the needs of this case. The evidence that the SEC seeks to develop—by posing questions crafted to obtain unfair adverse inferences, not supported by the record, without having to risk the deponent providing substantive answers that contradict the SEC's preferred narrative—to the extent relevant at all, would be "unreasonably cumulative or duplicative" of information that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

### A. Based on Mr. Duesterdiek's Current Role, He Is Not a Managing Agent.

The SEC can require VW to produce Mr. Duesterdiek for a deposition only if he is an officer, director or "managing agent" of the corporation at "the time of the deposition, not as of the time when the activities disputed in the litigation occurred." *Int'l Swimming League*, 2021 WL 629493, at *2 (rejecting argument that witness' former role is relevant for the managing agent analysis because "any past affiliation [witness] had with [the company] is of no moment in the Court's analysis") (quotation omitted); *In re Lithium Ion Batteries Antitrust Litig.*, 2016 WL 1161575, at *4 (N.D. Cal. Mar. 24, 2016) (applying the managing agent test "as of the date Plaintiffs first requested [witness'] deposition"). Because Mr. Duesterdiek is not an officer, director or managing agent, the SEC must seek his testimony through German law procedures, which it has not yet tried to do. *See Elasticsearch*, 2021 WL 1753796, at *1.

The first *Elasticsearch* factor—whether Mr. Duesterdiek is "invested with general powers allowing him to exercise judgment and discretion in corporate matters"—weighs heavily against the Court finding that he is now a VW managing agent. 2021 WL 1753796, at *1 (quotation omitted). Mr. Duesterdiek's current responsibilities involve analyzing warranty claims for commercial vehicles. (Ex. Q at 1 (he "is not engaged in any activities at Volkswagen . . . that relate in any way to diesel engine development, or the design or reporting of emissions systems for diesel engines").) Because his role now or previously has nothing to do with the Bond Offerings, Mr. Duesterdiek is not currently "invested with general powers allowing him to exercise judgment and discretion . . . respecting the subject matter of the litigation." *Symantec*, 2013 WL 503612, at *3–4 (quotation omitted).

As to the third *Elasticsearch* factor—"whether any person or persons are employed by the corporate employer in positions of higher authority than the individual," there are many

8

"persons . . . employed by [VW] in positions of higher authority than [Mr. Duesterdiek] in the area regarding which information is sought." *Elasticsearch*, 2021 WL 1753796, at *1 (quotation omitted). Indeed, the SEC has already deposed at least six individuals in positions of "higher authority" in the relevant area: the statements VW made in connection with the Bond Offerings.[7]

In its Plea Agreement, VW has already admitted that its engineers installed defeat devices in diesel vehicles sold in the United States. This securities fraud case is about whether the VW employees responsible for the Bond Offerings made, with the requisite scienter, materially false or misleading statements in connection with the sale of bonds. As the SEC concedes, Mr. Duesterdiek had no involvement in the challenged statements.[8] And his role from 2006 to 2016—involving engine development and the "ICCT Task Force"—is not relevant to whether he is now a VW managing agent.[9] *See Int'l Swimming League*, 2021 WL 629493, at *2; *Iconlab Inc.* v. *Valeant Pharms. Int'l, Inc.*, 2018 WL 11344058, at *4 (former employee "could not be [a] managing agent" because he had no role relevant to the litigation).

### B. VW's Inability To Force Mr. Duesterdiek To Appear for a U.S. Deposition by the SEC Confirms That He Is Not Now a VW Managing Agent.

The second factor—"whether the individual can be relied upon [by VW] to give testimony"—also does not support a finding that Mr. Duesterdiek is now a VW managing agent. *Elasticsearch*, 2021 WL 1753796, at *1 (quotation omitted). Mr. Duesterdiek has refused to sit for any deposition, including on written questions, even though he has been advised that VW could face sanctions if he fails to provide testimony. *See id.* at *2 (whether "witnesses were informed that their refusal to appear could lead to sanctions against" company is relevant in determining whether they can be relied upon to give testimony). As Prof. Dr. Thuesing explains, VW has no ability under Germany's protective labor laws to force Mr. Duesterdiek to sit for a deposition in a

---

[7]  These individuals include current General Counsel Philip Haarmann, current Head of Financial Publications Jens Klingfurt, current Senior Counsel Volker Schiffers, current Head of Sub-Department for Emissions Legislation and $CO_2$ Legislation Ingo Scholz, and current User Experience Officer and former assistant to Martin Winterkorn, Tobias Warnecke.

[8]  For this reason, the fourth *Elasticsearch* factor—"the general responsibilities of the individual respecting the matters involved in the litigation"—also weighs against a finding that Mr. Duesterdiek is a managing agent.

[9]  The SEC claims that Mr. Duesterdiek can testify about Juergen Peter's and Oliver Schmidt's knowledge "of the existence of the defeat device or of the potential legal and regulatory consequences of the defeat device." (Pl. Position at 5.) But the SEC both misconstrues the managing agent analysis, which focuses only on Mr. Duesterdiek's current role, and is incorrect as a factual matter. (*See infra* at 12.)

lawsuit brought by the SEC. It is clear that even "if [VW] was required to produce" Mr. Duesterdiek, he "would remain unwilling to appear." *Id.*

Mr. Duesterdiek's generalized cooperation agreement with VWAG does not obligate him to testify in this U.S. proceeding brought by the SEC:

*First*, Section 1(2) of Mr. Duesterdiek's cooperation agreement requires him to "appear in court and provide information on the matter at the request of the Employer in civil court proceedings." This action—a U.S. litigation brought by a U.S. government agency—is not a "civil court proceeding" within the meaning of the agreement, because (i) this case is not a "civil" proceeding under German law,[10] and (ii) Mr. Duesterdiek's agreement does not say that the obligation specifically applies to *U.S.* proceedings. (Ex. S at 10–16.)

*Second*, even if his cooperation agreement were intended to require Mr. Duesterdiek to be deposed by the SEC, that requirement would not be enforceable under German law because the agreement does not "clearly and transparently" communicate the obligation to participate in U.S. proceedings. (*See id.* at 17–19.) This agreement does not specify that it applies to U.S. litigation, much less a U.S. deposition—which does not exist under German law—by the SEC that would require Mr. Duesterdiek to leave German soil during the pendency of his criminal trial and testify under oath.

The SEC's expert, Dr. Freihube, relies on unrelated provisions of Mr. Duesterdiek's cooperation agreement—Sections 1(4) and 6—and incorrectly argues that references to "German and/or foreign proceedings" in these provisions show that the parties contemplated the entire agreement would apply to both German and U.S. proceedings, including an enforcement action brought by the SEC. Section 1(4) requires Mr. Duesterdiek to maintain confidentiality over information learned from "German and/or foreign proceedings" and provides that, notwithstanding such confidentiality obligation, information may be disclosed (i) pursuant to Section 1(2) (described above) in connection with "civil court proceedings," and (ii) to a monitor appointed by "domestic or foreign authorities or courts." (*Id.* at 13–14.) If Mr. Duesterdiek's entire agreement applied to both German and foreign proceedings, as the SEC claims, then it would be superfluous to note specifically that he is allowed to disclose information to a monitor in connection with "German or foreign" proceedings. Specifying that certain sections of the agreement apply to both proceedings and not doing so in other sections demonstrates that, had the parties sought to bind Mr. Duesterdiek to "provide information" in German and U.S. proceedings, they would have said so expressly. Section 6 addresses only the reimbursement for Mr. Duesterdiek's legal fees if he testifies in a proceeding, including two provisions referring to "examinations by the DOJ (or another U.S. authority)." (*See id.* at 15–16) This provision further confirms that when Mr. Duesterdiek and VWAG wanted to create obligations related to U.S. proceedings, they did so explicitly. Because the agreement does not specifically refer to U.S. proceedings in connection with Mr. Duesterdiek's obligation to cooperate in "civil court proceedings," the most reasonable

---

[10]    Germany's Federal Department of Justice recently advised the SEC that "the involvement of the United States Securit[ies] and Exchange Commission (SEC) as the plaintiff in the proceedings argues against the classification thereof as a civil or commercial matter." (Ex. O.)

reading of the phrase "civil court proceedings" would limit application only to German civil court proceedings, not "foreign"—*i.e.*, U.S.—proceedings. (*See id.*)

*Third*, under German law, VWAG can neither require Mr. Duesterdiek to leave Germany and testify under oath in a U.S. proceeding by the SEC nor discipline him for failing to do so. (*See id.* at 19–20, 22.) Any such discipline would almost certainly be successfully challenged in German labor court, and VWAG would be liable for damages. The SEC's reliance on cases regarding foreign "blocking" or other anti-discovery statutes is unavailing. No such statute is relevant here. Mr. Duesterdiek has refused to appear at a U.S.-style deposition, and VW cannot compel him to appear under German labor law. Further, the SEC's claim that Mr. Duesterdiek's intention to invoke his Fifth Amendment rights is no bar to compelling VW to produce him for a deposition misses the point. VW cannot be compelled to produce Mr. Duesterdiek because he is not a managing agent of the company.

### C. The SEC's Deposition Request Is Both Cumulative and Inappropriate.

Even if Mr. Duesterdiek were a managing agent of VW (he is not), the Court should deny the SEC's motion to compel his testimony, because the SEC seeks information that is "unreasonably cumulative or duplicative" and "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The SEC has already received much of the information it seeks from Mr. Duesterdiek's deposition. For instance, the SEC says that it seeks his testimony on VW's alleged attempts to "hide" the use of a defeat device. (Pl. Position at 2.) But in the SEC's declaration listing the dates on which it claims it learned of facts underlying each of the allegations in its Complaint, the SEC repeatedly stated that it already knows that information. *See, e.g.*, ECF No. 23 ¶¶ 73, 77–91 (admitting SEC's extensive knowledge regarding the development of the defeat device). The SEC does not deny that it has known these facts for over seven years, but instead asserts—without any support whatsoever—that the individuals it has deposed so far "have an incentive to deny knowledge of or involvement in" VW's use of a defeat device. (Pl. Position at 6.) Having had the opportunity to depose multiple witnesses involved in the Bond Offerings who truthfully testified about their lack of knowledge of the defeat device at the time of those Offerings, the SEC cannot complain that the robust evidentiary record does not support its theory of the case.

Because this case is about the Bond Offerings in which Mr. Duesterdiek had no role, the SEC acknowledges, as it must, that Mr. Duesterdiek's testimony is relevant only insofar as he could testify about what Juergen Peter and Oliver Schmidt "knew about the defeat device and other Omitted Facts." (*Id.* at 5.) Thus, by asking this Court to compel VW to produce Mr. Duesterdiek, the SEC seeks to set the stage for its effort to try to obtain adverse inferences against VW about the knowledge of Messrs. Peter and Schmidt, neither of whom the SEC has even sought to depose.

The SEC's attempt to obtain such adverse inferences against VW from Mr. Duesterdiek's refusal to testify is particularly unfair because the facts show that Messrs. Peter and Schmidt did not have knowledge of the defeat device prior to their involvement with the Bond Offerings. Both were document custodians in this matter, and the SEC has already asked several VW witnesses about Messrs. Peter's and Schmidt's knowledge of the defeat device. Notably, the brief that VW filed in an ongoing German securities litigation and voluntarily produced to the SEC makes clear

that Messrs. Peter and Schmidt were not aware of the defeat device when they reviewed certain challenged statements in the offering materials for the Bond Offerings. (*E.g.*, Ex. T ¶¶ 629-37 (stating that Mr. Duesterdiek and others intentionally kept Mr. Peter in the dark about the existence of the defeat device, even when they were working together on the ICCT Task Force).)[11] And during the deposition of every current and former VW employee that the SEC has asked about Mr. Peter's knowledge of the defeat device, these witnesses stated that they had no reason to believe that he knew of the defeat device prior to the last Bond Offering in May 2015.[12]

With respect to Mr. Schmidt, the SEC does not even attempt to allege that he was aware of the defeat device, regulatory investigations or potential monetary fines when he reviewed the challenged statements because it cannot do so. Mr. Schmidt has already sworn to a U.S. federal court that he "was informed of the existence" of the defeat device "[d]uring the summer of 2015," *i.e.*, after the final Bond Offering on May 22, 2015. (Ex. X at 6.) Instead, the SEC falsely equates Mr. Schmidt's knowledge of the ICCT Study with knowledge of the defeat device. The ICCT Study did not show, or even suggest, that VW had installed a defeat device in any vehicles. (Ex. Y at 144:25–145:3 ("[Y]ou cannot conclude [that VW was using a defeat device] just from that study alone.").)

---

[11] Because Mr. Peter was kept in the dark about the existence of the defeat device, the SEC's claim that the "Task Force Memo" shows that Mr. Peter was aware of "Omitted Facts" in April 2014 fails. The Task Force's preliminary analysis of the ICCT Study demonstrates that VW was unaware of what caused the emissions discrepancies and had not yet confirmed whether the results were accurate. Further, the memo merely provides the statutory maximum penalties for use of a defeat device; it does not suggest that VW would actually be required to pay fines anywhere near $20 billion. (Ex. T ¶ 619.)

[12] *See* Ex. U (S. Johnson Dep. Tr.) at 189:9-12 (no reason "to believe that Mr. Juergen was aware of the defeat device prior to July 2015"); Ex. V (M. Horn Dep. Tr.) at 180:23-181:1 (never "heard at any time that Juergen Peter was one of the people that knew about the defeat device"); Ex. W (G. Postel Dep. Tr. at 151:12-25 (had not "learned or become aware that Mr. Peter knew about Volkswagen's use of the defeat device prior to May 2015").

Respectfully submitted,

| | |
|---|---|
| */s/ Robert J. Giuffra, Jr.* | */s/ Daniel J. Hayes* |
| Robert J. Giuffra, Jr. | Daniel J. Hayes |
| Sharon L. Nelles | Eric Phillips |
| Suhana S. Han | Kevin A. Wisniewski |
| Matthew A. Schwartz | U.S. Securities and Exchange Commission |
| Christopher J. Dunne | Chicago Regional Office |
| SULLIVAN & CROMWELL LLP | 175 W. Jackson Blvd., Suite 1450 |
| 125 Broad Street | Chicago, Illinois 60604 |
| New York, New York 10004 | Telephone:   (312) 353-3368 |
| Telephone:   (212) 558-4000 | Facsimile:   (312) 353-7398 |
| Facsimile:   (212) 558-3588 | |
| | |
| *Attorneys for Defendants Volkswagen AG amd Volkswagen Group of America Finance, LLC* | *Attorneys for Plaintiff United States Securities and Exchange Commission* |

## ATTESTATION (CIVIL LOCAL RULE 5-1(i)(3))

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatories.

Dated:  January 13, 2023

/s/ Robert J. Giuffra, Jr.
Robert J. Giuffra, Jr.