UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>VOLKSWAGEN AKTIENGESELLSCHAFT, et al.,<br><br>　　　　　Defendants. | Case No. 19-cv-01391-CRB (AGT)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 90, 101–03 |

　　　　With one exception that isn't relevant here, the SEC has asked VW to "[i]dentify each VW officer, director, or employee . . . whom the VW Defendants believe knew, prior to May 22, 2015, about VW's use of a Defeat Device," and to "state in meaningful detail the basis for the VW Defendants' belief as to each person so identified." Dkt. 90-3 at 4–5. VW lodged a work-product objection to this interrogatory, which the Court now sustains.

　　　　To understand VW's objection, and why it has merit, it may be helpful to start from first principles. When one side serves an interrogatory on the other, the responding party's attorneys must gather information to respond. Sometimes the task is simple. For example, if an interrogatory asks a corporate defendant to state its profits from a given year, the defendant's lawyers can ask the company's CFO for the answer and write it down. The attorneys are simply a conduit, obtaining information from one person and giving it to another.

　　　　Other times, more due diligence is required. If an interrogatory asks a corporate defendant to identify all payments the defendant made to foreign officials, the company's attorneys may need to conduct an internal investigation, which may entail reviewing records and interviewing managers who had contact with foreign officials. The attorneys in this

example are more than a conduit; they gather information from multiple sources, synthesize it, and only then respond to the interrogatory.

Despite the greater burden associated with the second example, in both examples the attorneys' involvement doesn't transform what they uncover into protected attorney "work product." The interrogatories ask for facts (i.e., the company's profits in a given year, the payments the company made to foreign officials), and those facts, even if uncovered through an attorney's investigation, are discoverable. Courts have "consistently held that the work product concept furnishe[s] no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts." Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2023 (3d ed. rev. 2022).

The SEC's interrogatory is different. It doesn't ask for facts—e.g., the names of people who knew about the Defeat Device. It asks for an opinion. "[W]hom [do] the VW Defendants *believe* knew, prior to May 22, 2015, about VW's use of a Defeat Device." Dkt. 90-3 at 4 (emphasis added). To provide a fulsome answer, VW would need to do more than gather and synthesize information: VW would need to evaluate and form opinions about that information.

Part of this process may be straightforward. If certain VW employees admitted that they knew about the Defeat Device, VW could simply convey those admissions. But for other employees, considerable analysis could be required. There could be conflicting circumstantial evidence about whether a particular employee knew about the Defeat Device. VW would need to weigh that evidence and make a judgment call, deciding whether to list the employee as someone "whom the VW Defendants believe knew, prior to May 22, 2015, about VW's use of a Defeat Device." *Id.*

VW's *attorneys* would need to make this decision. They investigated VW's conduct. *See* Dkt. 90 at 1 ("From 2015 to 2017, the Jones Day law firm conducted an extensive internal investigation on behalf of Volkswagen AG's Supervisory Board."); *id.* at 2 (explaining that Gleiss Lutz, a German law firm, prepared a 2,000-page report "in connection with its legal review" of VW's conduct). They would be responsible for taking the results of those

investigations, plus the results of any follow-on inquires, and deciding "whom the VW Defendants believe knew . . . about VW's use of a Defeat Device." Dkt. 90-3 at 4.

VW's attorneys, in other words, would need to rely on their own impressions and opinions to answer the SEC's interrogatory, and their response to the interrogatory would reveal their own conclusions. This is why VW's work-product objection has merit. An attorney's "mental impressions, conclusions, [and] opinions" are among "the core types of work product protected under *Hickman* [*v. Taylor*, 329 U.S. 495 (1947)]." *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 n.3 (9th Cir. 2014). This type of information is "virtually undiscoverable." *Id.* (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 135 (D.C. Cir. 2010)); *see also Protective Nat. Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 279 n.1 (D. Neb. 1989) ("It is important to distinguish between facts learned by a lawyer . . . and the lawyer's mental impressions of the facts. The facts are discoverable if relevant. . . . Mental impressions of the lawyer regarding the facts enjoy nearly absolute immunity . . . .").

The SEC responds by pointing out that in one instance, an attorney's mental impressions regarding the facts *are* discoverable. Under Federal Rule of Civil Procedure 33(a)(2), a party may serve contention interrogatories, which are "not objectionable merely because [they] ask[] for an opinion or contention that relates to fact or the application of law to fact." The SEC asserts that the disputed interrogatory is a contention interrogatory, but the Court doesn't agree.

Interrogatories are typically used by the propounding party to obtain evidence to support the propounding party's claims or defenses. For example, in a negligence case involving an accident in a store, the plaintiff could serve an interrogatory asking the store owner to provide the names and contact information of the employees who were working when the accident occurred. The store owner's response would identify potential witnesses to the accident, whom the plaintiff could interview. The plaintiff could then use those interviews to build his negligence case.

Contention interrogatories are different. Rather than seeking information to support a claim or defense, a party uses contention interrogatories to learn more about the other side's

3

case. In the negligence-case example, the plaintiff could ask the defendant: do you contend that my conduct constituted contributory negligence? If the defendant answers, "yes," the plaintiff could also ask the defendant to state all facts that support his contention.

Unlike traditional interrogatories, which seek only facts (e.g., who was working when I was injured?), contention interrogatories can ask for opinions (e.g., are you claiming I was contributorily negligent?). But these opinions must relate to an "opponent's contentions." *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. C 02-4799 SBA (JL), 2005 WL 318811, at *8 (N.D. Cal. Jan. 5, 2005). Contention interrogatories aren't used to build the case-in-chief. *See Lexington Ins. Co. v. Commonwealth Ins. Co.*, 98-CV-3477-CRB (JCS), 1999 WL 33292943, *7 (N.D. Cal. Sept. 17, 1999) ("The purpose of contention interrogatories . . . [is] to narrow the issues that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position.").

The SEC's interrogatory isn't a true contention interrogatory because it isn't targeted at uncovering or understanding VW's contentions (i.e., VW's theories or defenses). Although the SEC says its interrogatory seeks discovery relevant to VW's scienter defense, the interrogatory is ill-suited for that purpose.

VW intends to argue that the SEC cannot prove the element of scienter, as necessary to prevail on the SEC's securities-fraud claims, because the persons "who prepared the challenged statements in the [VW bond] offering materials" didn't know about the Defeat Device when the challenged statements were made. Dkt. 90 at 2. To understand this defense, the SEC doesn't need to know the identity of "each VW officer, director, or employee . . . whom the VW Defendants believe knew, prior to May 22, 2015, about VW's use of a Defeat Device." Dkt. 90-3 at 4. The SEC only needs to know the identity of the VW officers, directors, and employees "who prepared the challenged statements in the [VW bond] offering materials." Dkt. 90 at 2.

To prove its affirmative case, the SEC may want to identify *each* VW officer, director, or employee who knew about the Defeat Device. But the SEC will need to obtain that information through traditional means (e.g., through document discovery, depositions, fact

4

interrogatories, requests for admission). The SEC can't compel VW to form and share opinions about facts that don't directly relate to VW's theories or defenses.

"The primary purpose of the work-product rule is to 'prevent exploitation of a party's efforts in preparing for litigation.'" *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (quoting *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)). The work-product rule applies here and serves this purpose. The SEC's interrogatory seeks VW's opinion work product, and VW need not answer it.[1]

**IT IS SO ORDERED.**

Dated: February 7, 2023

Alex G. Tse
United States Magistrate Judge

---

[1] The Court is satisfied that VW did not waive work-product protection. Although VW admits that it shared "documents and factual information" with the Department of Justice, it represents that its attorneys "did not provide the DOJ with their judgments as to who [VW] determined knew about the company's use of the defeat device." Dkt. 101 at 1 n.1. Also, even though VW, in proceedings in Australia, disclosed some of the information the SEC seeks here, *see id.* at 2, that disclosure didn't waive work-product protection because it was compelled by court order. *See In re JDS Uniphase Corp. Sec. Litig.*, No. C 02-1486 CW, 2007 WL 3144711, at *1 (N.D. Cal. Oct. 24, 2007) ("[C]ompelled production of information deemed to be attorney work product does not constitute a waiver of that right . . . .").