DANIEL J. HAYES (IL Bar No. 6243089)
Email: hayesdj@sec.gov
ERIC M. PHILLIPS (IL Bar No. 6237871)
Email: phillipse@sec.gov
JAKE A. SCHMIDT (IL Bar No. 6270569)
Email: schmidtj@sec.gov
KEVIN A. WISNIEWSKI (IL Bar No. 6294107)
Email: wisniewskik@sec.gov
RAVEN A. WINTERS (IL Bar No. 6291077)
Email: wintersr@sec.gov

U.S. SECURITIES & EXCHANGE COMMISSION
175 West Jackson Boulevard, Suite 1450
Chicago, Illinois 60604
Telephone: (312) 353-3368
Facsimile: (312) 353-7398

*Attorneys for Plaintiff United States Securities and Exchange Commission*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*U.S. S.E.C. v. Volkswagen AG,*<br>No. 3:19-cv-1391-CRB | MDL No. 2672 CRB (JSC)<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR SANCTIONS AGAINST DEFENDANT VOLKSWAGEN AG FOR VIOLATING JUDGE TSE'S FEBRUARY 10 ORDER**<br><br>Courtroom:  A<br>Judge:  Magistrate Judge Alex G. Tse |

**NOTICE OF MOTION AND MOTION**

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. Pro. 37 and Civ. LRs 7-8 and 37-4, Plaintiff Securities and Exchange Commission filed and noticed its Motion for Sanctions Against Defendant Volkswagen A.G. for Violating Judge Tse's February 10 Order, before Magistrate Judge Alexander Tse, Courtroom A of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102.

**TABLE OF CONTENTS**

I. QUESTION PRESENTED……………………………………………………………1

II. INTRODUCTION..……………………………………………………………………1

III. RELEVANT FACTS……………………………………………………………….2

    A. Thorsten Duesterdiek Is A Critical Witness…………………………………2

    B. The Court Ruled That Duesterdiek Is VW's Managing Agent
       And Ordered VW To Produce Him For A Deposition……………………………4

    C. Duesterdiek And VW Violate The Court's Order………………………………..4

IV. ARGUMENT…..……………………………………………………………...…….5

    A. The Court Should Sanction VW For Violating
       The Court's February 10 Order……………………………………………………5

    B. German Law Does Not Trump This Court's Orders……………………………...8

V. CONCLUSION……………………………………………………………………..10

**TABLE OF AUTHORITIES**

*Calderon v. Experian Information Solutions, Inc.*,
  209 F.R.D. 508 (D. Idaho 2013) ..................................................................................... 9

*Card Tech. Corp. v. DataCard Inc.*,
  249 F.R.D. 567 (D. Minn. 2008) ................................................................................. 5, 6

*Elasticsearch, Inc. v. Floragunn, GMBH*,
  2021 WL 1753796 (N.D. Cal. May 4, 2021) ................................................................. 7

*Elasticsearch, Inc. v. Floragunn, GMBH*,
  2022 WL 214468 (N.D. Cal. Jan. 25, 2022) ................................................................ 6-7

*Graco, Inc. v. Kremlin, Inc.*,
  101 F.R.D. 503 (N.D. Ill. 1984) ................................................................................... 10

*Guinnane v. Dobbins*,
  479 F. Supp. 3d 989 (D. Mont. 2020) ............................................................................ 6

*Hickman v. Taylor*,
  329 U.S. 495 (1947) .................................................................................................... 8-9

*In re Honda American Motor Co., Inc. Dealership Relations Litig.* 168 F.R.D. 535 (D. Md. 1996) ......................................................................................................................... 9, 10

*Motorola Credit Corp. v. Uzan*,
  509 F.3d 74 (2d. Cir. 2007) ............................................................................................ 6

*RP Golden State Mgmt., LLC v. Ohio Sec. Ins. Co.*,
  2021 WL 2536209 (E.D. Cal. June 19, 2021) ............................................................... 5

*SEC v. Helms*,
  2015 WL 5010298 (W.D. Tex. Aug. 21, 2015) ............................................................. 6

*Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*,
  357 U.S. 197 (1958) ....................................................................................................... 6

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*,
  2008 WL 81111 (S.D. Cal. Jan. 8, 2008) ....................................................................... 8

*Work v. Bier*,
  106 F.R.D. 45 (D.D.C. 1985) ..................................................................................... 8, 9

**Rules**
Fed. R. Civ. P. 37(b)(2)(A) ................................................................................................. 5

## MEMORANDUM OF POINTS AND AUTHORITIES

The Court should enter appropriate sanctions against Defendant Volkswagen A.G. ("VW") because it has violated this Court's February 10, 2023 Order ("February 10 Order"), by failing to produce its current employee and managing agent Dr. Thorsten Duesterdiek for deposition by March 3, 2023.

### I.     QUESTION PRESENTED

Should the Court enter sanctions against VW for violating the Court's February 10 Order requiring VW to produce its current employee and managing agent for a deposition in this case?

### II.     INTRODUCTION

Thorsten Duesterdiek is likely the most important witness in this case, and he is a big problem for VW. He had cradle-to-grave involvement in VW's long-running defeat device fraud. He can put senior VW executives in meetings where the defeat device was discussed and where orders were given to destroy documents. He can testify that VW personnel who worked on the Rule 144A Bond Offering documents at issue in this case knew about the defeat device, the emissions problems with VW's "Clean Diesel" cars, and the billions of dollars in fines and penalties VW faced as a result. And he's a current VW employee and managing agent, which means his testimony binds VW.

The fact that Duesterdiek refused to appear for his deposition does not change the fact that he is VW's managing agent. When this Court issued its February 10 Order, it considered the possibility that he might refuse to be deposed, as VW suggested. That is why the Court found "Factor 2 weighs modestly against a managing-agent finding." (Dkt. 106 at 3.) However, the Court also held: "[o]n balance, Factor 2 doesn't outweigh Factors 1, 3, and 4, all of which support a managing-agent finding." (*Id*.) Nothing has changed between February 10 and today; it's still three factors to one supporting the Court's managing-agent ruling.

The only relevant question now is what sanctions are appropriate for VW's failure, and Duesterdiek's refusal, to comply with this Court's February 10 Order. VW says none. (*See* VW's Motion for Relief from Court's February 10 Order, dkt. 113.) According to VW, it asked Duesterdiek to comply, he refused, and German law says there is nothing it can do about it. End

of story. VW argues its hands are tied even though it has a cooperation agreement with Duesterdiek that requires him to sit for "interviews" and to appear "in court" and "provide information … in civil court proceedings involving [VW] and/or other companies in the Volkswagen Group." But, according to VW, the cooperation agreement doesn't require Duesterdiek's cooperation in this case because VW "intended" to exclude from that agreement all U.S. "civil court proceedings." (*Id*. at 4.) It was not a drafting oversight; it was by design.

Yet while VW says Duesterdiek is off-limits to U.S. litigants and courts, it is making full use of his cooperation to defend itself against lawsuits in Germany. In a lengthy court brief VW filed in support of its defense to civil claims in Germany, VW has cited the testimony of "Dr. Thorsten Dusterdiek" over 100 times. According to VW's German court filing, Duesterdiek has already and/or will provide detailed testimony for VW about the defeat device fraud ***in Germany***. He just refuses to do it ***in the United States***. According to VW, that's not its problem; it's the SEC's problem and it's the Court's problem.

This Court should impose appropriate sanctions for VW's violation of this Court's order.

### III.   RELEVANT FACTS

**A.  Thorsten Duesterdiek Is A Critical Witness.**

Thorsten Duesterdiek is likely the most important witness in VW's entire defeat device fraud. He was a direct participant in all aspects of the fraud, from beginning to end. VW has admitted as much. According to VW's German court filing, Duesterdiek has testified or will testify about all of the following facts—among many, many others:

- Richard Dorenkamp's team of engineers "came up with the idea of using a switching function," which existed in "the engine control unit software … taken over from Audi AG," to adjust the vehicle's emission depending on the vehicle operating mode (German Filing, Ex. 1, ¶ 208);
- Duesterdiek and other "development engineers who were in the know continued to develop the [switching] function" (*id*. ¶ 228);
- "From 2010 onwards, increased damage to the diesel particulate filter occurred on US diesel vehicles with the EA 189 engine [which contained the defeat device]" (*id*. ¶ 464);
- "Dr. Thorsten Düsterdiek and other knowledgeable employees" suspected that the vehicles on the road were stuck in "roller mode" (*id*. ¶¶ 465-66);

2

- Duesterdiek had a meeting with senior VW personnel Bernd Gottweis[1], on July 25, 2012, during which he explained that "the damage to the diesel particulate filters [was possibly] due to the fact that the customers drove the vehicle in roller mode for too long," and he "drew a model explaining the roller mode" (*id.* ¶ 473);

- A few weeks later, Duesterdiek met with Dr. Heinz-Jakob Neusser[2], to explain the "true cause of the damage to the diesel particulate filter filters" and he used "the same model that he claims to have shown to Bernd Gottweis" (*id.* ¶ 475);

- After their respective meetings with Duesterdiek, Gottweis and Nuesser each "instructed" and "demanded" that "Duesterdiek destroy this model" (*id.* ¶¶ 473, 475);

- To fix the problem of the vehicles staying in "roller mode" for too long, Duesterdiek and others "had the idea of reversing" the switching function so the vehicles would "always start in road mode" and the switch to "roller mode should only take place once the parameters typical of emissions tests have been identified" (*id.* ¶¶ 485-87);

- After the International Council on Clean Transportation ("ICCT") announced that it had discovered excessive NOx emissions from VW vehicles tested during real world driving, VW assembled a "RDE NAR Task Force," with Duesterdiek selected as the "[h]ead of the task force" (*id.* ¶¶ 629-31);

- "The first meeting of the task force under Dr. Thorsten Duesterdiek took place on April 24, 2014" and included "Jurgen Peter," among others (*id.* ¶ 632);

- Duesterdiek's task force "include[d] precisely those who were entrusted with solving the problem [identified by the ICCT] who had taken the illegal measures in the first place" (*id.* ¶ 634);

- On April 28, 2014, Duesterdiek (and others) "informed Bernd Gottweis about a defeat device that is illegal under US law as the cause of the results of the ICCT study," (*id.* ¶ 612);

---

[1] In its criminal Plea Agreement, Volkswagen admits that Gottweis (called "Supervisor E"), who was the Head of VW's Product Safety Committee, knew about the defeat device and that, at a meeting "in or around July 2012," he instructed unnamed "engineers" to destroy a "document they had used to illustrate the operation of the defeat device." (Plea SOF, Ex. 2, ¶¶ 11, 48; VW Resps. to SEC Second RFAs, Ex. 3, ¶ 5 (admitting Gottweis is "Supervisor E").) Gottweis is no longer employed by VW, but Duesterdiek—one of the "engineers"—still is.

[2] In its criminal Plea Agreement, Volkswagen admits that Neusser (called "Supervisor A"), who was the Head of Engine Development for all of VW, knew about the defeat device and that, at a meeting "in or around July 2012," he instructed unnamed "engineers" to destroy a "document they has used to illustrate the operation of the defeat device." (Plea SOF, Ex. 2, ¶¶ 11, 48; VW Resps. to SEC Second RFAs, Ex. 3, ¶ 1 (admitting Neusser is "Supervisor A").) Neusser is no longer employed by VW.

3

- During that meeting, Duesterdiek warned Gottweis that the defeat device "could be discovered" by U.S. regulators, and that VW faced "significant financial consequences in the form of recalls and fines up to USD 30,000 per vehicle" (*id*.);

- At the conclusion of the meeting, "Bernd Gottweis announced that Prof. Dr. Martin Winterkorn will be informed about the content of the conversation." (*id*. ¶ 614).

Based on VW's German court filing, it's clear that VW has interviewed Duesterdieck, probably numerous times, and knows about his involvement in its defeat device scheme. Specifically as it relates to the SEC's case, he can testify that VW personnel who worked on the Rule 144A Bond Offering documents (*e.g.*, Juergen Peter) knew about the defeat device, the emissions problems with VW's "Clean Diesel" cars, and the billions of dollars in fines and penalties VW faced as a result. In fact, Juergen Peter, a member of Deusterdiek's ICCT task force, prepared VW's April 2014 task force memo, titled "Possible Consequences/Risks," that calculated the billions in fines and penalties and other legal consequences, such as buybacks, recalls and recertifications, VW could be hit with if U.S. regulators discovered the defeat device. (*Id*. ¶ 619; *see also* ICCT Task Force Memo, Ex. 4.)

### B. The Court Ruled that Duesterdiek is VW's Managing Agent and Ordered VW to Produce Him for a Deposition.

On February 10, 2023, this Court held that Duesterdiek is VW's managing agent, and ordered VW to produce him for deposition on or before March 3, 2023. (Dkt. 106 at 5.) The Court held three of the four managing agent factors supported a finding that Duesterdiek is VW's managing agent. (*Id*. at 2.) The only factor the Court found did not weigh in favor of managing agent status is the factor concerning whether Duesterdieck would appear at VW's request (*Id*. at 3.) The court still held Duesterdiek to be VW's managing agent: "Factor 2 doesn't outweigh Factors 1, 3, and 4, all of which support a managing-agent finding." (*Id*.)

### C. Duesterdiek and VW Violate the Court's Order.

During the weeks following the February 10 Order, the SEC tried to schedule Duesterdiek's deposition without success. On February 24, 2023, Duesterdiek's U.S. lawyer, Phillip Inglima, informed the parties that Duesterdiek would not appear for a deposition. (Ex. 5, 2/24/23 P. Inglima Ltr.) VW is paying for Mr. Inglima to represent Duesterdiek in this matter.

4

(Ex. 6, 3/13/23 S. Han Email.) According to Mr. Inglima, Duesterdiek would appear for testimony "only in response to a court order compelling his appearance." (Ex. 5, 2/24/23 P. Inglima Ltr.) The Court's February 10 Order did ***not***, according to Mr. Inglima, order Duesterdiek "personally" to appear for testimony. (*Id*.) Further, "only a German court can compel his appearance for testimony in Germany" and, according to Mr. Inglima, this Court lacks "authority to compel his appearance outside of Germany." (*Id*.)

On February 27, 2023, the SEC sent correspondence to VW's and Duesterdiek's attorneys regarding Duesterdiek's refusal to appear for a deposition, and in turn, VW's noncompliance with the February 10 Order. (Ex. 7, 2/27/23 D. Hayes Ltr.) As a compromise, the SEC proposed that: (1) Duesterdiek sign a detailed, sworn declaration prepared by the SEC in which he formally exercises his rights under U.S. and German law not to incriminate himself in respect to the matters at issue in this case; and (2) the parties stipulate that the declaration can be used and would be admissible in this case to the same extent as a deposition. (*Id*.) The next day, Mr. Inglima rejected the SEC's proposal. (Ex. 8, 2/28/23 P. Inglima Ltr. to D. Hayes.)[3]

### IV.   ARGUMENT

#### A.   The Court Should Sanction VW For Violating The Court's February 10 Order.

"If a … managing agent of a party … fails to obey an order to provide or permit discovery, the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Those orders can require a variety of sanctions, including, but not limited to adverse inferences against the party. *RP Golden State Mgmt., LLC v. Ohio Sec. Ins. Co.*, 2021 WL 2536209, at *3-4 (E.D. Cal. June 19, 2021) (granting motion for monetary and adverse inference sanctions against party whose managing agents failed to appear for their properly noticed depositions); *Card Tech. Corp. v. DataCard Inc.*, 249 F.R.D. 567, 571-72 (D. Minn. 2008) (admitting facts as established as sanction for managing agent's nonappearance, despite party's

---

[3] Mr. Inglima had previously informed the SEC that, if ordered to testify in this case, Duesterdiek would exercise "his rights [not to incriminate himself] under the Fifth Amendment to the U.S. Constitution and similar doctrines of German law." (Ex. 9, 11/28/22 P. Inglima Ltr. at 1-2.)

5

best efforts to get managing agent to appear). Moreover, the Court need not find a party willfully violated its discovery order to issue sanctions. *Card Tech. Corp.,* 249 F.R.D. at 570; s*ee Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 207-208 (1958). "[T]he willfulness or good faith of [the party], can hardly affect the fact of noncompliance and are relevant only to the path which the District Court might follow in dealing with [the party's] failure to comply." *Societe Internationale*, 357 U.S. at 207-208. Thus, even if the Court believes VW's actions in attempting to get Duesterdiek to appear constitute good faith, the Court may still sanction VW for violating the Court's February 10 Order.

      Here, the Court should enter appropriate sanctions against VW because Duesterdiek's refusal to testify and provide evidence in this case substantially prejudices the SEC, particularly given his extensive role in and knowledge about all aspects of the fraud. The Court's sanctions should include, at a minimum: (1) an instruction to the jury that VW was ordered to produce Duesterdiek as a witness, but VW failed to do so; (2) an instruction to the jury that they may infer from Duesterdiek's absence that his testimony, if it had been given, would be harmful to VW; and (3) a finding that all facts supporting the SEC's allegations that Duesterdiek could testify to, including those facts set forth above in Section III.A., are deemed true and established for purposes of this case. There is ample authority for the Court to impose these sanctions here. *See Card Tech. Corp.,* 249 F.R.D. at 571-72 (admitting facts as established as sanction for managing agent's nonappearance, despite party's best efforts to get managing agent to appear); *see also Motorola Credit Corp. v. Uzan*, 509 F.3d 74, 85 (2d. Cir. 2007) (finding adverse inference regarding net worth appropriate where defendants refused to sit for depositions); *Guinnane v. Dobbins*, 479 F. Supp. 3d 989, 995-96 (D. Mont. 2020) (discussing the possibility of an adverse inference instruction if a party fails to produce an adequate Rule 30(b)(6) deponent); *SEC v. Helms*, No. A-13-CV-01036 ML, 2015 U.S. Dist. LEXIS 110758, 2015 WL 5010298, at *11 (W.D. Tex. Aug. 21, 2015) (inferring from defendant's bad faith refusal to testify that her answers to the SEC's deposition questions would have been unfavorable to her).

      In its recently filed motion asking this Court to reconsider its February 10 Order, VW relies heavily on this Court's ruling in *Elasticsearch, Inc. v. Floragunn, GMBH*, 2022 WL

6

214468, at *4 n.4 (N.D. Cal. Jan. 25, 2022) (M.J. Tse) ("*Elasticsearch II*"). In *Elasticsearch II*, the Court declined to enter sanctions against the defendant because the defendant terminated the contracts of two non-employee freelance programmers when they refused to appear for their depositions. *Id*. There is no comparison between the facts in the *Elasticsearch* case and the facts here.

In its initial *Elasticsearch* ruling, this Court found that two non-employee freelance programmers were defendant's managing agents and ordered defendant to produce them for depositions. *Elasticsearch, Inc. v. Floragunn, GMBH*, 2021 WL 1753796, at *3 (N.D. Cal. 2021) ("*Elasticsearch I*"). Later, after the freelance programmers refused to be deposed, the defendant threatened to terminate their contracts. When they refused still, the defendant carried through on its threat and terminated their contracts. Under those specific circumstances, the Court determined that sanctions were not appropriate for defendant's violation of the Court's order. *Elasticsearch II*, 2022 WL 214468, at 4 n.4.

The situation here is very different. *First*, Duesterdiek is nothing like the non-employee witnesses in *Elasticsearch*. He is currently employed by VW as a "manager in [VW's] Quality Assurance Department," he has worked for VW for over 25 years, and he has a cooperation agreement with VW requiring him to sit for interviews and answer questions about the diesel fraud. (*See* Dkt. 104 at 2, 3; Dkt. 104-14.) Although VW says that its cooperation agreement with Duesterdiek does not require his cooperation with U.S. civil proceedings, VW admits that is because it and Duesterdiek designed the agreement that way. They "intended" to exclude U.S. civil cases from its scope. (Dkt. 113 at 4.) *Second*, the defendant in *Elasticsearch* threatened to and did in fact terminate the contracts of the non-employee programmers when they refused to comply. Here, the opposite is true. VW has not threatened or taken any action against Duesterdiek to get him to cooperate. It has done nothing more than send two letters to Duesterdiek's attorney, whom VW is paying, asking Duesterdiek to sit for a deposition. *Third*, there was no indication in *Elasticsearch* that the freelance programmers and the defendant were cooperating in other proceedings. Duesterdiek, however, has made himself fully available to VW in German court proceedings, and VW is using his knowledge and testimony to defend itself in

7

those proceedings. In sum, Duesterdiek and VW believe they are free to pick which forums they will cooperate in. This Court just isn't one of them.[4] This was not the situation in *Elasticsearch*.

### B.  German Law Does Not Trump This Court's Orders.

In its recent Motion for Relief (Dkt. 113), VW claims that it should not be required to make its managing agent and current employee Duesterdiek available for deposition by the SEC, despite the Court's February 10 Order, because German law purportedly gives VW's employees the right to ignore the orders of U.S. courts. According to VW, it cannot even require its employee to sign a declaration confirming that the employee has exercised his rights to remain silent. (Dkt. 113 at 5.) The Court doesn't need to wade into what German law permits or doesn't permit to reject VW's argument. German law cannot serve as a complete shield for VW's violations of the Court's February 10 Order.

German companies, like VW, choosing to do business in the U.S. must comply with U.S. discovery obligations when their actions lead to U.S. lawsuits. *Work v. Bier*, 106 F.R.D. 45 (D.D.C. 1985) (ordering German employees' depositions despite argument that German law barred depositions). As this Court noted in its February 10 Order, "[f]oreign laws 'do not deprive an American court of the power to order a party to produce evidence under the Federal Rules.'" *Id*. (*quoting Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 2008 WL 81111, at * 6 (S.D. Cal. Jan. 8, 2008)). This is true "although the production of the evidence may violate [foreign statutes] and subject the defendant to penalties' in his home country." *Synthes*, 2008 WL 81111, at *6 (ordering depositions of Brazilian nationals even though Brazilian law did not permit depositions in Brazil). In the United States, "[m]utual knowledge of all the relevant

---

[4] VW's cooperation agreement with Duesterdiek is dated August 15, 2017. (Dkt. 104-14 at 6.) That is nearly two years after VW received notice that the SEC had begun investigating its defeat device fraud, and many months after other federal and state agencies and private plaintiffs filed lawsuits against VW in the U.S. If VW actually wanted to ensure Duesterdiek's cooperation in this and other U.S. civil cases, it easily could have, and would have, included an <u>express</u> provision requiring him to cooperate in U.S. proceedings. Instead, VW *chose* not to. Why? Obviously because it did not want Duesterdiek to cooperate in U.S. civil cases like this one. Thus, Duesterdiek is not now defying VW's wishes; he is doing what the parties "intended" when they designed his cooperation agreement. (*See* Dkt. 113 at 4.)

1  facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495,
2  507 (1947). It would be "patently unfair" for "the scope of plaintiff['s] discovery [to] be limited
3  by [foreign] law," while defendants "have free reign to discover all relevant facts pursuant to the
4  Federal Rules of Civil Procedure." *In re Honda American Motor Co., Inc. Dealership Relations*
5  *Litig.*, 168 F.R.D. 535, 537-39 (D. Md. 1996) (compelling depositions of Japanese nationals in
6  the United States to avoid limitations of Japanese law).[5]

7        This is not a case where the Court's discovery order threatens to infringe Germany's
8  sovereignty, such that the Court needs to undertake a "comity analysis." *Id.* at 537 (a "balancing
9  of competing interests between the sovereigns and the parties involved" is required if foreign
10 nation's sovereignty would be infringed by the Court's order); *Calderon v. Experian Information*
11 *Solutions, Inc.*, 209 F.R.D. 508, 520 (D. Idaho 2013). "[W]hen depositions of foreign nationals
12 are taken on American or neutral soil, courts have determined that comity concerns are not
13 implicated." *Honda*, 168 F.R.D. at 538 (citing cases); *Work*, 106 F.R.D. at 51 ("violation of
14 [Germany's] judicial sovereignty is avoided by ordering that the depositions take place outside
15 the country."). The Court did not order VW to produce Duesterdiek for a deposition in Germany.
16 As with all other depositions of VW employees taken in this case, Duesterdiek's deposition can
17 proceed in Brussels or America. VW and Duesterdiek can comply with the Court's order without
18 violating German law; they just refuse to and now want to see if the Court will change its mind
19 because of their defiance.

---

[5] VW claims it cannot even punish Duesterdiek for refusing to sign a declaration confirming his intent to exercise his rights to remain silent. (Dkt. 113 at 5.) That not only defies common sense, but it is simply not accurate. According to German employment attorney Dr. Dirk Freihube, German legal authority supports the fact that "the employee can [] be requested by the employer to submit a sworn statement" and that the "employee's obligation to provide information upon the employer's request is also enforceable." (Ex. 10, 3/15/23 Decl. of Dr. Dirk Freihube at 1-2 (cites omitted).) If VW really wanted Duesterdiek to sign a statement saying that he was exercising his right to remain silent, he would sign it. And if he didn't, VW *could* reprimand him. In any event, the Court need not get bogged down trying to resolve disputed principles of German labor law. United States law—not German law—governs the discovery obligations of VW and its managing agents.

Even if a balancing of competing interests were necessary, the sovereignty concerns of the United States would easily prevail over the non-existent German sovereignty interests implicated by the Court's order. The United States has a clear and strong interest "in maintaining the integrity of its judicial system and the power of its jurisdiction over persons doing business in the United States." *Honda*, 168 F.R.D. at 539. Moreover, this is an enforcement action brought by the federal government agency charged by Congress with civil enforcement of the federal securities laws, and it involves claims that defendants violated those laws by fraudulently selling billions of dollars in bonds to U.S. investors. *See id.* (case between private parties involving federal antitrust laws and questions of U.S. economic policy implicated U.S. sovereignty). The sovereignty concerns of the United States would be "severely infringed" if its laws, its court rules, and its courts' orders had to give way to Duesterdiek's objection to being deposed. *Id*.

VW cannot hide behind German law to side-step this Court's valid discovery orders to the great prejudice of the SEC. *See Graco, Inc. v. Kremlin, Inc.*, 101 F.R.D. 503, 527 (N.D. Ill. 1984). To paraphrase the *Graco* court's holding, "The [German] Statute is not [the SEC's] problem, and it is not the court's problem; it is [VW's] problem." *Id*.

VW's violation of the Court's February 10 Order should be sanctioned, not rewarded.

### V.  CONCLUSION

If the Court allows VW to escape sanctions here, VW will have written the perfect playbook for foreign corporate litigants looking to duck their discovery obligations— *i.e.*, their managing agents are free to disregard the orders of U.S. courts without consequence. The fact that VW is now trying to shoehorn its way into the very different situation present in this Court's recent ruling in *Elasticsearch* proves this point. VW—not the SEC and not the Court—must bear the consequences of the decisions made by its managing agents. VW certainly understood when it decided to tap into American financial markets to raise billions of dollars from U.S. investors that its decision came with strings—*i.e.*, an obligation to comply with U.S. law, including U.S. discovery rules. VW has enjoyed the immense upside to that decision; it cannot now simply cut the strings.

For the foregoing reasons, the SEC respectfully requests that grant this motion, that it enter all appropriate sanctions against VW, including the sanctions requested in this motion, and grant the SEC all additional relief that is appropriate in the circumstances.

Dated:  March 17, 2023                    Respectfully submitted,

/s/ Daniel J. Hayes
U.S. Securities and Exchange Commission
175 W. Jackson Blvd., Suite 1450
Chicago, Illinois  60604
Telephone:  312-353-3368
Email:  hayesdj@sec.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2023, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing. The Clerk of the Court will transmit a Notice of Electronic Filing to all ECF registrants.

/s/ Daniel J. Hayes