1  Robert J. Giuffra, Jr. (*admitted pro hac vice*)
2  Sharon L. Nelles (*admitted pro hac vice*)
   Suhana S. Han (*admitted pro hac vice*)
3  Matthew A. Schwartz (*admitted pro hac vice*)
   Christopher J. Dunne (*admitted pro hac vice*)
4  SULLIVAN & CROMWELL LLP
   125 Broad Street
5  New York, New York 10004
   Telephone:  (212) 558-4000
6  Facsimile:   (212) 558-3588
7
   *Attorneys for Defendants Volkswagen AG and*
8  *Volkswagen Group of America Finance, LLC*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2672 CRB (AGT) |
| This Document Relates to: | **DEFENDANT VOLKSWAGEN AG'S OPPOSITION TO PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR SANCTIONS** |
| *United States Securities and Exchange Commission* v. *Volkswagen AG, et al.*, Case No. 19-cv-1391 | Courtroom: A<br>Magistrate Judge Alex G. Tse |

**PRELIMINARY STATEMENT**

The SEC asks the Court to impose on Volkswagen AG ("VWAG") draconian and unwarranted sanctions seeking to end the liability phase of this case. Because there is no basis in law or fact to do so, the Court should deny the SEC's motion.

In its February 10, 2023 Order, the Court determined that Thorsten Duesterdiek, who currently works in VWAG's Quality Assurance department, is a managing agent and ordered VWAG to produce him for a deposition by March 3, 2023. (ECF No. 106.) After receiving that Order, VWAG repeatedly requested that Mr. Duesterdiek sit for a deposition or provide written testimony. (*See* ECF No. 113 ("VW Motion for Relief") at 1–2; ECF No. 117 ("VW Reply") at 2, 7.) VWAG informed Mr. Duesterdiek that his failure to do so might harm VWAG's position in this case. Notwithstanding VWAG's requests, Mr. Duesterdiek has refused to testify. As VWAG explained at length in its earlier filings, and according to Prof. Dr. Thuesing (one of Germany's preeminent German labor law experts), German labor law does not permit VWAG to force Mr. Duesterdiek to appear at a deposition or to sign a sworn statement in this U.S. action, and VWAG cannot discipline or terminate him for his refusal to do so. (*See* VW Motion for Relief at 3–5; VW Reply at 3–4.)

On March 2, unable to comply with the Court's February 10 Order despite its best efforts, VWAG sought relief from that Order in advance of the March 3 deadline. (*See* VW Motion for Relief.) VWAG explained that Mr. Duesterdiek's final and definite refusal to testify, even though he has been informed of the risk that this Court could impose sanctions on his employer in this action, makes clear that he is not a managing agent of VWAG. (*Id.*) The SEC opposed that request (*see* ECF No. 114), and, before the Court could rule on VWAG's motion seeking relief from the February 10 Order, moved for severe sanctions against VWAG.

Specifically, the SEC asks the Court to "deem[] as true and established for purposes of this case" at least fifteen different factual allegations, including:

- that Mr. Duesterdiek "informed Bernd Gottweis about a defeat device that is illegal under US law as the cause of the results of the ICCT study" on April 28, 2014;

- that at "the conclusion of th[at] meeting, Gottweis announced that Prof. Dr. Martin Winterkorn will be informed about the content of the conversation"; and

- that "personnel who worked on the Rule 144A Bond Offering documents (*e.g.*, Juergen Peter) knew about the defeat device, the emissions problems with VW's 'Clean Diesel' cars, and the billions of dollars in fines and penalties faced as a result."

(*see* ECF No. 115 ("SEC Sanctions Motion") at 2–4 (internal quotation marks omitted); ECF No. 116 ("SEC Proposed Order") at 1.)

Remarkably, the SEC urges the Court to "deem" many of these allegations "as true and established" without even citing to any evidence in the record supporting its allegations. The SEC also requests that the jury be instructed that Mr. Duesterdiek's testimony on these points, "if it had been given, would be harmful to VW." (*See* SEC Proposed Order at 1.)

Were the Court to "deem" the SEC's allegations "as true and established," the Court would all but enter a judgment of liability, in the SEC's favor, against VWAG in this action. The SEC's allegations go to the central disputed issues in this action. In other words, based solely on the refusal of one VWAG employee to testify in this action, notwithstanding VWAG's best efforts to persuade him to testify, the SEC wants the Court to essentially deem the SEC the winner in the liability phase of this case. The SEC would achieve this windfall without having to introduce a single document or question a single witness in support of its allegations and even though there is contradictory evidence—actually developed in discovery in this case—refuting the SEC's allegations.

Even if the Court does not revisit its determination that Mr. Duesterdiek is a managing agent of VWAG, the Court should reject the sanctions that the SEC seeks here.

*First*, as the Court has already held in a different case, "sanctions [are] not warranted" against a party that has "in fact used its best efforts to secure" a managing agent's deposition, "albeit unsuccessfully." *Elasticsearch, Inc.* v. *Floragunn GmbH*, 2022 WL 214468, at *4 n.4 (N.D. Cal. Jan. 25, 2022) (Tse, M.J.). That makes sense, because a discovery order "compels the party to use its best efforts to provide the required discovery[;] it doesn't demand the impossible." *AECOM Energy & Constr., Inc.* v. *Ripley*, 2018 WL 4745146, at *2 (C.D. Cal.

-2-

June 27, 2018) (quoting *Sali* v. *Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1224 (9th Cir. 2018)). This case is on all fours with *Elasticsearch*. Like the defendant there, VWAG has done everything it can to comply with the Court's Order, and its inability to produce Mr. Duesterdiek was entirely beyond its control, including what is permitted under governing German labor law. The SEC all but concedes as much, relegating its contrary arguments to a footnote. (*See* SEC Sanctions Motion at 9 n.5.)

*Second*, even if the Court believes some sanction is warranted, the SEC is not entitled to the "severe" sanction of a court order declaring that certain "designated facts shall be taken to be established," *Hilao* v. *Est. of Marcos*, 103 F.3d 762, 764–65 (9th Cir. 1996) (internal quotation omitted). "For [that] specific sanction, the Ninth Circuit has required the [violation] to have been willful or in bad faith." *McGee-Grant* v. *Am. Fam. Mut. Ins.*, 2016 WL 9526415, at *2 (W.D. Wash. Feb. 25, 2016). The SEC has not even attempted to satisfy that bad-faith requirement, nor could it.

*Third*, the imposition of the sanction of an adverse inference requires "independent evidence of the fact about which the party refuses to testify." *Prime Media Grp., LLC* v. *Acer Am. Corp.*, 2015 WL 527836, at *2 (N.D. Cal. Feb. 6, 2015). Here, there is no record evidence supporting many of the allegations the SEC makes. Most notably, as set out above, the SEC alleges that Mr. Peter and other unnamed VWAG employees knew about the defeat device prior to working on the Twin I, II, and III Bond offerings at issue in this case. (SEC Sanctions Motion at 4.) Tellingly, the SEC cites *no* evidence that *any* individual who was involved in the Bond offerings, including Mr. Peter, had such knowledge within the relevant timeframe. On the contrary, all of the deposition testimony and documentary evidence that the SEC has elicited during its wide-ranging discovery suggests that Mr. Peter—whom the SEC has not even sought to depose—did *not* know as of May 2014. *See infra* at 11–12.

As for the SEC's dozen other factual allegations, the fact that Mr. Duesterdiek has refused to testify about them does not prejudice the SEC at all, let alone "substantially prejudice[]" it as the SEC claims (SEC Sanctions Motion at 6). That is because the allegations almost exclusively concern matters (i) about which the SEC has already obtained proof or admissions

-3-

from VWAG, or (ii) which are irrelevant to this securities fraud case, which turns on whether the VWAG employees responsible for the Bond offerings made, with the requisite scienter, materially false or misleading statements in connection with the sale of the Bonds. For example, the SEC asks the Court to deem it an established fact that "Richard Dorenkamp's team of engineers came up with the idea of using a switching function, which existed in the engine control unit software taken over from Audi AG, to adjust the vehicle's emission depending on the vehicle operating mode." (SEC Sanctions Motion at 2 (internal quotation marks and alterations omitted).) VWAG has already admitted as much (Ex. A[1] ¶¶ 34–35; Ex. B at Response No. 6), and Mr. Dorenkamp had no responsibility for the Bond offerings. The SEC's inability to have Mr. Duesterdiek testify to confirm irrelevant facts that VWAG has already admitted does not cry out for the "extreme sanction" of issuing an "adverse inference instruction," *Moore* v. *Gilead Scis., Inc.*, 2012 WL 669531, at *5 (N.D. Cal. Feb. 29, 2012) (internal quotation omitted), let alone the even more "severe" sanction of an issue establishment order, *Hilao*, 103 F.3d at 765.

## ARGUMENT

I. **SANCTIONS ARE NOT WARRANTED BECAUSE VWAG HAS USED ITS BEST EFFORTS TO COMPLY WITH THE COURT'S ORDER AND PRODUCE MR. DUESTERDIEK.**

"[W]hile a Rule 37 order compels the party to use its best efforts to provide the required discovery, it doesn't demand the impossible." *AECOM*, 2018 WL 4745146, at *2 (quoting *Sali*, 884 F.3d 1224) (internal quotation marks omitted); *accord Read* v. *Ulmer*, 308 F.2d 915, 918 (5th Cir. 1962) ("Rule 37 is not a legal requirement of the impossible."). Thus, "[i]f a party's failure" to "comply with a production order" is "shown to be due to inability fostered neither by its own conduct nor by circumstances within its control, it is exempt from the penal sanctions of the rule." *Read*, 308 F.2d at 918.

This Court applied this exact principle in materially identical circumstances in *Elasticsearch*. The Court had previously held in that case that two witnesses were managing agents of the defendant floragunn, a German company, and "ordered floragunn to produce both witnesses

---

[1] Exhibit numbers refer to exhibits appended to the Declaration of Suhana S. Han, filed herewith.

for deposition." 2022 WL 214468, at *4. When floragunn did not, the plaintiff Elasticsearch requested Rule 37 sanctions, including an order barring the two witnesses from testifying at trial and an order deeming certain facts established. (*See* Joint Discovery Letter Brief, No. 19-cv-05553 (N.D. Cal. May 21, 2021), ECF No. 100 ("*Elasticsearch* Brief"), at 3–4.) Elasticsearch argued—as does the SEC here—that the witnesses' nonappearance "reflect[ed] a consistent effort by floragunn to shield its developers from depositions," *id.* at 3, and that there was no other "sufficient substitute" witness whom Elasticsearch could question on the relevant topics, *id.* at 2.

The Court, however, found that "sanctions were not warranted." *Elasticsearch*, 2022 WL 214468, at *4 n.4. It concluded that floragunn "had in fact used its *best efforts* to secure the [witnesses'] depositions (albeit unsuccessfully), thus precluding sanctions." *Id.* (emphasis added). Specifically, floragunn had requested that the witnesses testify, notified them that sanctions against floragunn might result if they did not, informed them that it would terminate their freelance contracts as of "the earliest date permissible under German law" if they refused to appear, and ultimately did so. *Id.* Even though Elasticsearch argued that the witness's failure to appear caused it significant prejudice, the Court declined to hold against floragunn the fact that the witnesses "still refused" to appear despite its best efforts to produce them. *Id.*

The Court should do the same here. As explained at length in the VW Motion for Relief and VW Reply, VWAG has done everything it can to comply with the Court's Order. It has repeatedly requested that Mr. Duesterdiek appear for a deposition or sign a sworn declaration, and repeatedly advised him that VWAG could be subject to sanctions if he refuses. (*See* VW Motion for Relief Exs. A & D.) Nevertheless, he refuses, and German law forbids VWAG from threatening, reprimanding, or terminating him for refusing to appear for a deposition or sign a sworn declaration in a U.S. proceeding. (Att. A to Ex. C at 22.) The SEC and its expert, Dr. Freihube, do not even contest that VWAG is prohibited from disciplining Mr. Duesterdiek for his refusal to be a witness in this action. Instead, the SEC argues (in a footnote) that "[i]f VW really wanted Duesterdiek to sign a statement saying that he was exercising his right to remain silent, he would sign it," and "if he didn't, VW *could* reprimand him." (SEC Sanctions Motion at 9 n.5.) But as Prof. Dr. Thuesing states, just as Mr. Duesterdiek's cooperation agreement does not

-5-

create an obligation for Mr. Duesterdiek to testify in a U.S. deposition, that agreement does not require Mr. Duesterdiek to sign a sworn declaration for a U.S. proceeding. (Att. B to Ex. C at 2–4.) Because Mr. Duesterdiek's cooperation agreement does not create a legal duty for him to sign a declaration, VWAG cannot discipline Mr. Duesterdiek for his refusal to do so. (*Id.* at 4–5.)[2] VWAG has therefore, just like floragunn, "in fact used its best efforts to secure [Mr. Duesterdiek's] deposition[] (albeit unsuccessfully), thus precluding sanctions" in this case. *Elasticsearch*, 2022 WL 214468, at *4 n.4. That can and should be the end of it.

The SEC attempts to distinguish *Elasticsearch* on four grounds. (*See* SEC Sanctions Motion at 7.) None works.

*First*, the SEC points out that Mr. Duesterdiek is a current employee of VWAG, rather than a freelancer or independent contractor. (*Id.*) That is a red herring. The Court had previously held that the witnesses in *Elasticsearch* were managing agents and ordered floragunn to produce them. That is exactly what happened here.

*Second*, the SEC notes that Mr. Duesterdiek has a cooperation agreement with VWAG. (*Id.*) The SEC does not explain why that matters, and it does not. As Prof. Dr. Thuesing demonstrates, the cooperation agreement does not obligate Mr. Duesterdiek to participate in *U.S.* civil litigation. (*See* VW Motion for Relief at 3–4.) Thus, the existence of the agreement does not change the bottom line: VWAG lacks the lawful authority to take any action against Mr. Duesterdiek, just as it would in the absence of the agreement. Again, the SEC barely argues otherwise. In any event, the SEC overlooks the fact that the witnesses in *Elasticsearch* also had cooperation provisions in their contracts. *Elasticsearch* Brief at 3.

---

[2] As VWAG explained in the VW Reply, the single sentence in the declaration of Dr. Freihube stating that it is "partly held that the employee can also be *requested* by the employer to submit a sworn statement," (SEC Sanctions Motion Ex. 10 at 1 (emphasis added)), pointedly does not say that VWAG may *discipline* Mr. Duesterdiek if he refuses such a request. (*See* VW Reply at 3 & n.2.) Indeed, VWAG has requested that Mr. Duesterdiek sign such a statement, but he has refused. In any event, as Prof. Dr. Thuesing explains, whether an employer may require an employee to submit a sworn declaration is highly contested in German labor law and, to the extent an employer may do so, it may only require an employee to submit a sworn declaration *to the employer*, not to the government—let alone a foreign government. (See Ex. C at 1.)

*Third*, the SEC emphasizes that VWAG, unlike floragunn, has not even threatened to discipline Mr. Duesterdiek. (SEC Sanctions Motion at 7.) That is at least a distinction, but it makes no difference. Setting aside that VWAG cannot discipline Mr. Duesterdiek for refusing to do something he is not required to do, even assuming VWAG is permitted to threaten disciplinary action for his refusal to testify in this case, such a threat would be empty, and any adverse employment action VWAG took would almost certainly be reversed, with damages, by a German labor court. (Att. A to Ex. C at 22.) Rule 37 does not require the pointless any more than it requires the impossible.

*Finally*, the SEC repeats its baseless assertion that VWAG's inability to produce Mr. Duesterdiek is "by design." (SEC Sanctions Motion at 2, 7.) According to the SEC, the company is actually executing a scheme—put into motion back in August 2017, when Mr. Duesterdiek's cooperation agreement was executed—to deprive the SEC of Mr. Duesterdiek's testimony while simultaneously "using his knowledge and testimony to defend itself in" the ongoing German securities litigation. (*Id.* at 7–8.) As VWAG has already explained (*see* VW Reply at 5–7), this is not only wrong but makes no sense. Mr. Duesterdiek is not cooperating with VWAG in the German proceeding. (*Id.* at 5–6; Ex. D at 2–3.) In preparing the VW German Brief, VWAG's German counsel has not spoken to Mr. Duesterdiek about its defense in that case, nor did VWAG notify Mr. Duesterdiek that his name could be included in the VW German Brief, or ask Mr. Duesterdiek about what he would say if called as a witness in the German securities litigation. Ex. D at 2–3. Indeed, if Mr. Duesterdiek is actually a "big problem" for VWAG as the SEC claims (SEC Sanctions Motion at 1), VWAG would not affirmatively offer his testimony in its German securities litigation; on the other hand, if he was such a big help in Germany, VWAG would have no reason to conspire to keep him from testifying here.

In reality, the fact that Mr. Duesterdiek's cooperation agreement does not require him to give testimony in a U.S. proceeding has nothing to do with any nefarious plot. VWAG did not consider his participation in a U.S. deposition at the time the agreement was drafted. (Att. A to Ex. C at 3 ("I am not aware of any evidence that depositions in non-German court proceedings were considered at the time.").) That makes sense, given that the concept of a U.S. deposition is

foreign to German law. (*Id.* at 18.) At any rate, when Mr. Duesterdiek's agreement was executed 18 months before the SEC sued VWAG, the company had no reason to intentionally exclude the SEC's lawsuit from the scope of the cooperation agreement.

Without evidence, the SEC is asking the Court to believe that VWAG is engaged in a deliberate campaign to "duck [its] discovery obligations." (SEC Sanctions Motion at 10.) Nothing could be further from the truth. Far from intentionally evading its discovery obligations, VWAG has consistently complied with them. Since the SEC brought this action, VWAG has timely and diligently responded to its ever-expanding discovery demands, including (i) producing over 600,000 documents to the SEC totaling over five million pages responsive to nearly 100 document requests; (ii) producing 14 witnesses for depositions (including multiple 30(b)(6) witnesses); and (iii) responding to at least 42 distinct interrogatories and 197 requests for admission propounded by the SEC. The Court can and should consider this record. *See Henry* v. *Gill Indus, Inc.*, 983 F.2d 943, 947 (9th Cir. 1993) (explaining that courts should "consider[] all of defendant's discovery conduct" when resolving sanctions issues).

Lastly, unable to show that VWAG is wrong about the meaning of German law or that it intentionally boxed itself into this position, the SEC falls back to the contention that German law is irrelevant because German law does not trump U.S. law. (SEC Sanctions Motion at 8–10.) But VWAG is not claiming that at all. VWAG is explaining why, despite its best efforts, it has regrettably been unable to comply with the Court's Order. The "why" is that, given the constraints imposed upon VWAG by German law, VWAG has no further tools at its disposal to persuade Mr. Duesterdiek to testify.

## II. NONE OF THE SEC'S REQUESTED SANCTIONS IS WARRANTED.

In its Motion and Proposed Order, the SEC asks the Court to enter five specific sanctions:

> (1) the trier of fact shall be instructed that the Court ordered VW to produce Duesterdiek for deposition, but VW failed to do so;
>
> (2) the trier of fact shall be instructed that it may infer from Duesterdiek's non-appearance at his deposition that his testimony, if it had been given, would be harmful to VW;

-8-

1        (3) the Court deems as true and established for purposes of this case all facts supporting the SEC's allegations as to which Duesterdiek could testify to [sic], including those facts set forth above in Section III.A. of the SEC's Motion;

       (4) the SEC may request prior to trial that the Court deem as true and established for purposes of this case additional facts it believes could have been established through Duesterdiek's testimony; [and]

       (5) Defendants are barred from calling Duesterdiek as a witness at any trial or hearing and are barred from presenting any evidence or argument based on his testimony.

(SEC Proposed Order at 1.)

       The SEC has failed to demonstrate that any of these sanctions is justified in light of the circumstances and governing law. On this record, neither the severe penalty of "taking the plaintiff's allegations as established," *Commodity Futures Trading Comm'n* v. *Noble Metals Int'l, Inc.*, 67 F.3d 766, 770–71 (9th Cir. 1995), nor the "extreme sanction" of an "adverse inference instruction," *Prime Media Grp.*, 2015 WL 527836, at *2 (internal quotation omitted), is remotely warranted. The SEC likewise has no basis to obtain the other sanctions because they relate to irrelevant allegations and are overbroad.

    **A.**     **VWAG Did Not Act Willfully or In Bad Faith.**

       To obtain the sanction of "order[ing] that . . . designated facts shall be taken to be established," the SEC must show that VW's failure to comply with the Court's order was "willful or in bad faith." *Hilao*, 103 F.3d at 764–65; *see McGee-Grant*, 2016 WL 9526415, at *2 ("[F]or th[e] specific sanction" of issue establishment, "the Ninth Circuit has required the party's failure to appear to have been willful or in bad faith."); *Johnson* v. *Exec. Protective Agency K-9 & Investigative Servs., Inc.*, 2010 WL 11508751, at *3 (S.D. Cal. Oct. 5, 2010) ("The failure to appear for a deposition may be sanctioned by the Court in an order finding designated facts to be established, however, for a sanction this severe, the party's failure must have been willful or in bad faith."). The SEC does not argue that VWAG has acted willfully or in bad faith.[3] Nor could

---

[3] To the extent the SEC intended to argue that VWAG has engaged in the necessary bad faith by purposely tying its own hands with respect to Mr. Duesterdiek—an argument that the SEC does

1  it—the only "disobedient conduct" the SEC identifies was "outside [VWAG's] control." *SEC* v.
2  *Hong*, 2021 WL 4803497, at *4 (C.D. Cal. Sept. 17, 2021), *report and recommendation adopted*,
3  2021 WL 4923310 (C.D. Cal. Oct. 21, 2021).

4          Instead, the SEC contends that "the Court need not find" bad faith or willfulness
5  "to issue sanctions." (SEC Sanctions Motion at 6.) That may be true as to certain lesser sanctions,
6  but it is not true for issue establishment, precisely because it is a harsh remedy. Indeed, the very
7  Supreme Court language cited by the SEC explains that "willfulness or good faith . . . *are*
8  *relevant* . . . to the path which the District Court might follow in dealing with [a party's] failure to
9  comply." *Societe Internationale Pour Participations Industrielles et Commerciales, S.A.* v.
10 *Rogers*, 357 U.S. 197, 207–08 (1958) (emphasis added).

11         The SEC points to only one out-of-circuit case, *Card Technology Corp.* v.
12 *DataCard Inc.*, 249 F.R.D. 567 (D. Minn. 2008), in support of its request for issue establishment.
13 (SEC Sanctions Motion at 5–6.) The plaintiff in *Elasticsearch* cited that case as well in its
14 unsuccessful motion. *Elasticsearch* Brief at 2. But *Card Technology* is an extreme outlier, and
15 one that rested on the district court's apparent view that "the judicial admission of certain
16 facts . . . is not necessarily a severe sanction." 249 F.R.D. at 571. The Ninth Circuit has expressly
17 rejected that premise. *See Hilao*, 103 F.3d at 765 (calling issue establishment sanction "severe");
18 *see also Johnson*, 2010 WL 11508751, at *3 (same). Indeed, the cases that *Card Technology* cited
19 do not even support the proposition that the judicial establishment of certain facts is not a severe
20 sanction; rather, they say that such a sanction is "*less* severe and harsh . . . than dismissal or
21 default." *English* v. *21st Phoenix Corp.*, 590 F.2d 723, 728 (8th Cir. 1979) (emphasis added); *see*
22 *Stanton* v. *Iver Johnson's Arms, Inc.*, 88 F.R.D. 290, 292 (D. Mont. 1980) (issue establishment is
23 a "less drastic [sanction] than striking the pleadings or dismissing the case or entering judgment
24 by default"). *Stanton*, in fact, actually explicitly called issue establishment a "severe sanction."
25 88 F.R.D. at 291.

---

27 not actually make anywhere in its Motion—that assertion remains absurd for the reasons given
28 above, *see supra* at 7–8, and in the VW Reply at 5–7.

### B. Issue Establishment Sanctions Would Severely Prejudice VWAG.

It would also be highly prejudicial and unfair to VWAG for the Court to deem established certain facts alleged by the SEC. The SEC asks the Court to deem it true that "personnel who worked on the Rule 144A Bond Offering documents . . . knew about the defeat device, the emissions problems with VW's 'Clean Diesel' cars, and the billions of dollars in fines and penalties faced as a result." (SEC Sanctions Motion at 4.) In other words, the SEC asks the Court to deem it established that *every* person who was involved in the Bond offerings—most of whom never edited a challenged statement or met Mr. Duesterdiek, and some of whom have testified under oath that they were unaware of this information—knew that VWAG was using a defeat device when they worked on the Bond offerings. The SEC cites no evidence, and has not even tried to develop evidence, that *all* VW personnel involved in the Bond offerings knew about this information.

Nor has the SEC presented *any* evidence that Mr. Duesterdiek could identify any individual involved in the Bond offerings who knew "about the defeat device, the emissions problems with VW's 'Clean Diesel' cars, and the billions of dollars in fines and penalties faced as a result," (*id.*), prior to their involvement in the Bond offerings. Tellingly, the SEC only actually names one—Juergen Peter, who reviewed three challenged statements for the Twin I Bond offering and no challenged statements for the Twin II or III Bond offerings. (*See id.*) More than 20 individuals were involved in the Challenged Statements, and many more individuals were involved in other statements the SEC has not challenged, but the SEC fails to explain how all of those individuals were aware of the existence of the defeat device, much less point to any supporting evidence in the record.

Moreover, there is no record evidence that Mr. Peter knew about the defeat device prior to his involvement in the Twin I Bond offering. The SEC does not cite any support for that allegation. (*See* SEC Sanctions Motion at 4.) Mr. Peter is a document custodian in this matter, and the SEC has not cited any documents in his possession or sought to depose him. The SEC has already asked several VWAG witnesses about Mr. Peter's knowledge of the defeat device, and each witness has testified that he had no reason to believe that Mr. Peter knew of the defeat device

prior to the last Bond offering in May 2015.[4]  Indeed, the SEC's own translation of the brief that VWAG filed in the German securities litigation ("VW German Brief")—on which the SEC relies for many of its requested admissions (SEC Sanctions Motion at 2–4)—states that Mr. Duesterdiek and others intentionally kept Mr. Peter in the dark about the existence of the defeat device during the period prior to the Twin I Bond offering, even when they were working together on the ICCT Task Force.  Ex. I ¶¶ 629–37.[5]

The SEC also asks the Court to deem it an established fact that on April 28, 2014, "Bernd Gottweis announced that Prof. Dr. Martin Winterkorn *will be informed*" about the defeat device.  (SEC Sanctions Motion at 4 (quoting SEC Ex. 1 ¶ 614) (emphasis added).)  The SEC bases this request on a cherry-picked paragraph from the VW German Brief.  But the next two paragraphs of that Brief, which the SEC conveniently omits, state that "Bernd Gottweis denies having stated that he would have to inform Prof. Dr. Martin Winterkorn," (Ex. H (¶ 615), and that "no discussion took place between [the two] on the content of the meeting on April 28, 2014." (*id.* ¶ 616.)  In any event, the SEC's translation of the paragraph at issue is flatly incorrect.  According to a certified translation of relevant excerpts of the VW German Brief, the paragraph actually states that, according to Mr. Duesterdiek, Mr. Gottweis "announced that he *wanted to inform* Prof. Dr. Martin Winterkorn," *not* that Mr. Winterkorn "*will*" be informed of the defeat device:

---

[4] (*See* Ex. E (S. Johnson Dep. Tr.) at 182:9–12 (no reason "to believe that Mr. Juergen was aware of the defeat device prior to July 2015"); Ex. F (M. Horn Dep. Tr.) at 180:23–181:1 (never "heard at any time that Juergen Peter was one of the people that knew about the defeat device"); Ex. G (G. Postel Dep. Tr. at 151:12–25 (had not "learned or become aware that Mr. Peter knew about VWAG's use of the defeat device prior to May of 2015").)

[5] Because Mr. Peter was kept in the dark about the existence of the defeat device, the SEC is wrong to suggest that the "April 2014 task force memo" shows that Mr. Peter was aware of relevant facts in April 2014. (SEC Sanctions Motion at 4.)  The Task Force's preliminary analysis of the ICCT Study demonstrates that VW was unaware of what caused the emissions discrepancies and had not yet confirmed whether the results were accurate.  Further, the memo merely provides the statutory maximum penalties for use of a defeat device; it does not suggest that VW would actually be required to pay fines anywhere near $20 billion.  (Ex. H ¶ 619; *see also* Ex. F (Horn Dep. Tr.) at 67:20–68:18 ("[M]y understanding [of the ICCT Study and Task Force memo in 2014] was . . . they would address these issues and then they would come up with a solution and handle this in an appropriate and legally compliant way.").)

1 | Dirk Waldecker, Jörn Kahrstedt and Dr. Thorsten Düsterdiek ~~also supposedly remember~~**furthermore state that they recall** that Bernd Gottweis **supposedly** announced that he **wanted to inform** Prof. Dr. Martin Winterkorn ~~will be informed~~ about the content of the ~~conversation~~**discussion**.

(*Compare* SEC Sanctions Motion Ex. 1 ¶ 614, *with* Ex. H ¶ 614.) Thus, the SEC's incomplete and inaccurate description of a paragraph from the VW German Brief cannot in fairness form the basis of any binding judicial admission.

As to the rest of the facts the SEC seeks to have established, the SEC is not prejudiced by Mr. Duesterdiek's failure to testify because (i) the SEC has already obtained proof or admissions of those facts, and/or (ii) they are irrelevant to this litigation, which is about whether the VWAG employees responsible for the Bond offerings made, with the requisite scienter, materially false or misleading statements in connection with the sale of the Bonds. VWAG has already admitted, for instance, that its engineers installed defeat devices in diesel vehicles sold in the United States (Ex. A ¶ 38), that Mr. Gottweis and Mr. Heinz-Jakob Neusser knew about the defeat device (*id.* ¶ 48 (admitting "Supervisors A and E" learned about the defeat device in July 2012); Ex. B at Response Nos. 1, 5 (admitting "Supervisor A" is Mr. Neusser and "Supervisor E" is Mr. Gottweis)), and that Mr. Peter was on the ICCT Task Force (Ex. B at Response No. 11).[6] To the extent that the SEC seeks to introduce the VW German Brief into evidence at trial, the SEC may not leverage VWAG's inability to produce Mr. Duesterdiek to convert the statements in the Brief from *party* admissions (which are admissible *evidence*) into findings akin to *judicial* admissions (which are *binding factual determinations*).

**C.     The SEC Is Not Entitled to The Extreme Sanction of an Adverse Inference.**

Like an order deeming certain facts established, "an adverse inference instruction is an extreme sanction and should not be taken lightly." *Moore*, 2012 WL 669531, at *5 (internal quotation omitted). To be entitled to such an instruction in response to a party's invocation of its right against self-incrimination, the moving party "must demonstrate that 1) there is a substantial need for the information; 2) there is not a less burdensome way of obtaining that information; and

---

[6] VWAG's response to each of the SEC's specific requested established facts is enclosed as Appendix A.

1  3) there is independent evidence of the fact about which the party refuses to testify." *Prime Media*
2  *Grp.*, 2015 WL 527836, at *2.
3         As explained above, the SEC has no substantial need for most of the information it
4  seeks to glean by deposing Mr. Duesterdiek, as such facts have either already been admitted, are
5  irrelevant, or both.  And as to the purported knowledge of Mr. Peter, the SEC has other ways of
6  obtaining that information.  Most importantly, the SEC cannot point to any independent evidence
7  of the fact that Mr. Peter had knowledge of the defeat device prior to his involvement with the
8  Twin I Bond offering—let alone that Mr. Duesterdiek would say so—because, as set out above,
9  the SEC has not obtained any such evidence over the course of its investigation and discovery.  It
10 is therefore not entitled to any adverse inference.

11        **D.    The SEC's Other Requested Sanctions Are Unwarranted.**
12        VWAG also objects to instructing the jury that "the Court ordered VW to produce
13 Duesterdiek for deposition, but VW failed to do so." (SEC Proposed Order at 2.)  As worded, that
14 instruction would give the jury the misleading impression that VWAG intentionally flouted the
15 Court's Order, rather than made its best efforts to comply only to come up short.  If the SEC would
16 like the jury to know that Mr. Duesterdiek did not appear for a deposition notwithstanding the
17 Court's Order, it should have no objection to the jury learning all the relevant facts, including that
18 VWAG's multiple requests to Mr. Duesterdiek were rebuffed and that German labor law
19 prohibited VWAG from reprimanding him for doing so.
20        The final sanction requested by the SEC, which would bar VWAG from "calling
21 Duesterdiek as a witness at any trial or hearing and . . . from presenting any evidence or argument
22 based on his testimony," (SEC Proposed Order at 1), is unnecessary and overbroad.  It is
23 unnecessary because VWAG will not offer Mr. Duesterdiek at any trial or hearing in this case.  It
24 is overbroad to the extent it can be read to preclude VWAG from making arguments based on the
25 previous testimony of Mr. Duesterdiek that could be corroborated by other witnesses simply
26 because Mr. Duesterdiek at one point testified to those facts.  By way of example, the SEC itself
27 cites factual statements in the VW German Brief as to which Mr. Duesterdiek is only one of several
28 identified witnesses.  (*See* SEC Sanctions Motion at 4 (citing VW German Brief ¶ 614).)

-14-

## CONCLUSION

VWAG cannot do anything more than it has already done to address Mr. Duesterdiek's refusal to testify. As this Court recognized in *Elasticsearch*, when a party ordered to provide its managing agent for a deposition has "in fact used its *best efforts*" to comply with that order, sanctions are not warranted. 2022 WL 214468 at *4 n.4 (emphasis added). Nothing else is needed to deny the SEC's motion.

But even if the Court disagrees, the SEC is not entitled to the extreme issue-establishment or adverse-inference sanctions it requests. It has not shown, as it must, that VWAG has acted willfully or in bad faith. And the many facts that the SEC seeks to have established, or as to which it seeks adverse inferences, are either (i) without support in the voluminous evidentiary record or (ii) irrelevant and essentially undisputed. There are no grounds to punish VWAG at all, let alone with the severe and compromising sanctions the SEC seeks, for Mr. Duesterdiek's failure to testify.

Dated:  March 31, 2023

/s/  Robert J. Giuffra, Jr.
Robert J. Giuffra, Jr. (*admitted pro hac vice*)
Sharon L. Nelles (*admitted pro hac vice*)
Suhana S. Han (*admitted pro hac vice*)
Matthew A. Schwartz (*admitted pro hac vice*)
Christopher J. Dunne (*admitted pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:   (212) 558-4000
Facsimile:   (212) 558-3588

*Attorneys for Defendants Volkswagen AG and Volkswagen Group of America Finance, LLC*